Syllabus.

## JOHN WHITE

### *v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield November 2, 1891.*

1. CRIMINAL LAW—*when defendant is liable for the acts of another—common design.* A city marshal attempted to arrest A and B for a recent larceny of goods, which they were selling at less than cost price, under circumstances authorizing an arrest. A shot the officer, when A and B ran away and escaped. There was no proof of a common design to resist the officer. The court, on the trial of B for the assault, instructed the jury that B would be guilty of the shooting the same as if he had fired the shot himself, provided they believed, from the evidence, beyond a reasonable doubt, that the defendant intended to resist the arrest by using extreme violence: *Held,* that the instruction was erroneous, as ignoring the question of a common design to resist the officer.

2. The mere presence of a party at an assault with intent to kill is not sufficient to constitute him a principal, unless there is something in his conduct showing a design to encourage, incite, or in some manner aid, abet or assist the assault. Aiding, abetting or assisting are affirmative in their character. It is not sufficient that there is a mere negative acquiescence, not in any way made known to the principal malefactor.

3. If two persons have a common design to do an unlawful act, then, in contemplation of law, whatever act one of them does in furtherance of such original design is the act of both, and they will each be guilty of whatever crime is committed.

4. If one of two persons, in resistance of an arrest for a crime, shoots the officer in the presence of the other, such other person will not be responsible for the shooting unless he combined with the one shooting to resist arrest. It is not sufficient that he may have had an intention to resist arrest in his own mind, without reference to the other party, if such intention was not the result of a common design formed between them.

5. SAME—*aiding and abetting by signs and without words.* If a party, when sought to be arrested with another for a crime, aids, abets, advises or encourages such other person, by signs or motions, without words, to assault the officer attempting the arrest, he will be responsible for such assault, the same as if made by him.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. JACOB FOUKE, Judge, presiding.

Messrs. DRENNAN & HOGAN, for the plaintiff in error:

The fourth, sixth, seventh and ninth instructions for the People are erroneous. They bring prominently before the jury the proposition that if both White and Robbins had been guilty of a crime, "and they both intended to resist arrest to the extent of using extreme violence, and in resisting an arrest one Robbins shot said Jordan with intent to kill him, then both Robbins and White are each guilty." The testimony fails to show that White and Robbins ever said a word to each other, or made a sign or move which tended to show that there was any agreement or concert of action in resisting the arrest or doing the shooting.

These instructions were, doubtless, intended to be based upon the proposition of law, that where two or more parties are doing an unlawful act, in itself tending to bloodshed, the killing by one in pursuance of the unlawful enterprise would be the act of all. But the crime proved to have been committed was, first, a burglary at Flora, and the shooting was not done while pursuing that unlawful act; and second, retaining possession and continuing in the larceny of the goods, and the shooting was no part of that act.

The most that possibly can be said in this case is, that White, the defendant herein, was present when Robbins shot Jordan. This could not make him accessory to the crime. "Aiding, abetting or assisting are affirmative in their character." This defendant, White, did nothing. *White* v. *People,* 81 Ill. 333.

Mr. JAMES B. RICKS, and Mr. JOSEPH C. CREIGHTON, for the People:

The possession of the stolen property in Christian county is in law a stealing of it in that county. Starr & Curtis' Stat. chap. 38, sec. 459.

Plaintiff in error and his accomplice were together when they sold knives and revolvers to Byron Travis and Dr. Tobey.

The officer had the right to arrest. Rev. Stat. chap. 38, secs. 401, 459.

The People were not required to show an actual agreement, made *viva voce*, between the defendant and his accomplice to resist arrest. All they have to show are circumstances and acts of the parties which prove the conspiracy to resist arrest.

Mr. GEORGE HUNT, Attorney General, also for the People.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is an indictment in the Circuit Court of Christian County against the plaintiff in error for assault with intent to commit murder upon the person of one W. A. Jordan by shooting him. He was found guilty by the jury, and sentenced to three years in the penitentiary.

The material facts are as follows: On March 24, 1890, the plaintiff in error and one Robbins appeared in the village of Assumption in said county, where they were strangers and had never been seen before, with a number of revolvers and knives in their possession, some of which they sold to citizens of that place at prices below cost. Robbins had five or six revolvers and 30 or 40 knives. Plaintiff in error sold a revolver to Dr. Tobey for $1.00; Robbins sold three knives worth $3.00 to Byron Travis for 50 cents, and three knives worth $2.15 to Herschel Travis for 50 cents.

These circumstances having excited suspicion, Byron Travis called upon W. A. Jordan, the Marshal of the village, between 5 and 6 o'clock in the evening while he was at supper, and informed him of the conduct of the two strangers. As soon as he had finished his supper, Jordan telegraphed to the City Marshal at Pana, and the Chief of Police at Decatur, to know if they had information of any burglaries, and was told in reply, "that articles of that description had been taken over about Paris the 19th." Jordan then started out to arrest the

two men, and summoned one Joseph Jarrell to assist him. Jordan found Robbins and plaintiff in error, sitting on the side of the railroad track, a short distance from the village, about 7 o'clock in the evening of March 24, after dark. He sat down with them and had some conversation about hauling hay. After a few moments Robbins arose, and said "I must go." Jordan swears, that he then threw back his coat, showed his star, and said: "I am the Marshal, and you must go down town with me." Plaintiff in error swears, that he did not know that Jordan was the Marshal, and that Jordan did not say he was an officer, nor show his badge. Robbins, who was a low, heavy-set man, and is described as being bow-legged, and walking as if crippled, replied: "I am not going," or "you'll not take me." Jordan answered "you will," and sprang towards Robbins, who had put his hand in his pocket when the Marshal told him he must go to town. Jordan says: "Just as I made the step, he shot me; he was standing in the middle of the track at that time; this defendant (White) stood by the side of the track outside of the rail; I noticed their pockets were heavily loaded; when the heavy-set man fired, he started to run; I fired three shots at him; this defendant then sprang in the track and started to run after him. I shot one shot at him." Jordan was shot in the face, eye, neck and hand with common shot, and his left eye was put out. As the defendant ran, he threw away his coat, which was afterwards found, and in its pockets were one revolver and one knife. Another revolver lay near the coat. Both men escaped. Plaintiff in error was afterwards arrested, but Robbins has never been arrested as we understand the evidence.

Jordan says, that, when the two men "first got up, they both started off, and when I spoke, they both whirled around, and this gentleman here (White) pushed his hands in his pockets." Plaintiff in error swears, that he started to run before the first shot was fired, but Jordan swears that four shots had been fired before plaintiff in error began to run. When Jarrell

and Jordan started out, they separated and went in different directions, so that, when the shooting occurred, Jarrell was too far off to see what occurred, as it was quite dark at the time.

After Jordan stated that the men must go to town with him, there is no evidence that plaintiff in error did anything before he ran away, unless it be that, when first spoken to after he arose from the ground, he whirled around and put his hands in his pockets. Plaintiff in error did not say that he would not go with the officer; the refusal to go was uttered by Robbins. Plaintiff in error fired no shot; the shot which injured Jordan was fired by Robbins. Jordan says: "This defendant (White) did not make any demonstrations or say a word, except he had his hands in his coat pockets."

Upon the trial below, a witness named Southwick testified that he was a hardware merchant in Flora, Clay County, Illinois; that he saw plaintiff in error in Flora in company with two others on the 19th, 20th and 21st days of March, 1890; that the plaintiff in error and those with him were strangers; that the store of witness was burglarized on the night of March 21, and from 12 to 15 revolvers, about 100 knives and 100 cartridges were stolen therefrom; that the property taken was worth from $75.00 to $100.00; that the witness saw plaintiff in error in Flora across the street from his store on the morning after the burglary. Southwick identified one of the revolvers as his, and swore that the other goods were of the same kind as those stolen from him, but could not swear positively that all had been taken from his store.

Upon the state of facts thus detailed, the court told the jury, in the seventh instruction given for the prosecution, that, if they believed from the evidence in the case, beyond a reasonable doubt, that the defendant and one Robbins stole the property offered in evidence in this case from J. H. Southwick in Clay County, Ill., and carried the same to Assumption, Illinois, and were there trying to sell said property, and that the prosecuting witness, Jordan, was Village Marshal of As-

sumption at said time, and had reasonable ground to believe that said defendant and Robbins were in possession of stolen property, then it was his duty to apprehend and arrest them, "and if, while attempting to arrest them, one Robbins shot the said Jordan with intent to kill him, then this defendant, John White, would be guilty of said shooting, just the same as if he had fired the shot himself—provided you further believe from the evidence, beyond a reasonable doubt, that the defendant intended to resist the arrest by using extreme violence." We think that this instruction was erroneous for the reasons hereinafter stated.

If plaintiff in error and another had a common design to do an unlawful act, then in contemplation of law, whatever act such other person did in furtherance of the original design would be the act of both, and both would be equally guilty of whatever crime was committed. (*Hanna* v. *The People*, 86 Ill. 243.) The instruction does not proceed upon the assumption, that the shooting was done by Robbins while he and plaintiff in error were engaged in the unlawful act of robbing Southwick's store, or while he and plaintiff in error were engaged in the unlawful act of concealing or disposing of the stolen property in their possession. The theft, and the possession of the stolen property, and the efforts to sell it, are simply referred to as showing the authority and duty of Jordan to make the arrest. If the instruction can be construed as asserting that the defendant and Robbins had a common design to do an unlawful act, the only unlawful act, to which it so refers, is resistance of arrest.

But the instruction does not submit to the jury the question whether or not the defendant and Robbins had combined, or formed a common design, or common intention to resist arrest by the officer. As defendant did not do the shooting himself, he could not be held responsible for the shooting done by Robbins, unless he combined with Robbins to resist the arrest, or unless the shot was fired in the attempt to execute

a purpose common to both Robbins and himself. The instruction, however, ignores the idea of a common design, or conspiracy, between the two men. The intent to kill is presented as the individual intent of Robbins, and the defendant is asserted to be equally guilty with Robbins, if he had the intention to resist arrest even though he had formed such intention in his own mind without reference to Robbins, and independently of the question whether or not such intention was entertained in pursuance of a common design formed between himself and Robbins.

In the respect indicated the instruction was erroneous, and in view of the extreme meagreness of any evidence, which tended to connect the defendant with the unlawful attempt of Robbins to resist arrest, it was important that the jury should be accurately instructed. There is nothing to show that plaintiff in error and Robbins had formed any common design to resist arrest, or had even anticipated that an effort would be made to arrest them. Only a few seconds elapsed between the announcement of Jordan that he wanted them to go to town with him, and the advance of Jordan towards Robbins, which induced the latter to fire the shot. The two men did not know, that Jordan was an officer until said announcement was made, and there was no opportunity for any combination between them in view of the darkness and the other circumstances surrounding them. It is true, that the plaintiff in error would have been responsible if he had aided, or abetted, or advised, or encouraged Robbins in his unlawful conduct by signs or motions, (*Brennan* v. *The People*, 15 Ill. 511) but, beyond the mere fact that the plaintiff in error turned around and put his hands in his coat pockets when Jordan stated that they must go to town with him, he made no sign or motion of any kind until he ran away. The turning around was not necessarily a threatening movement, but rather a natural one, in view of what Jordan said, and in view of the surprise at

the discovery that the man who had been talking about hauling hay was an officer.

It is true that a revolver was found in the pocket of the coat after it was thrown away, but the possession of the revolver under the circumstances of this case did not necessarily indicate that it was intended to be used in resistance of arrest, as it was a part of the property that had been stolen, and which the possessors of it were trying to dispose of.

But even if the acts of the plaintiff in error in turning around and putting his hands in his pockets did indicate an intention on his part to resist arrest, there is no proof that Robbins saw either of these acts, or that they were intended as signs to Robbins that plaintiff in error would unite with him in an attempt to resist arrest. The mere presence of a party at an assault with intent to kill is not sufficient to constitute him a principal, unless there is something in his conduct showing a design to encourage, incite, or in some manner aid, or abet, or assist the assault. Aiding, abetting or assisting are affirmative in their character. It is not sufficient that there is a mere negative acquiescence, not in any way made known to the principal malefactor. (*White* v. *People*, 81 Ill. 333; *Lamb* v. *The People*, 96 id. 73; 9 Am. & Eng. Enc. of Law, pages 574, 575.) Here, it appears from the evidence of the prosecution, that the plaintiff in error stood outside of the track with a pistol in his possession until after Jordan had fired three shots at Robbins, and not only took no part in the assault, but made no "demonstrations" whatever, either of encouragement to Robbins, or of hostility towards Jordan.

After a careful examination of the evidence in this case in connection with the instructions, we are unable to say, that it so far tends to sustain the verdict as to justify us in affirming the judgment.

The judgment of the Circuit Court is reversed, and the cause is remanded.

*Judgment reversed.*