CASE 71—PROSECUTION AGAINST CHARLES LEVERING FOR
MURDER.—March 10, 1909.

# Levering v. Commonwealth

Appeal from Jefferson Circuit Court. (Criminal
Division).

JOSEPH PRYOR, Judge.

Defendant convicted and appeals—Affirmed.

1. Homicide—Murder—Deliberation and Premeditation—Burden of
   Proof.—In a murder prosecution for poisoning accused's wife
   by giving her strychnia as medicine, the commonwealth must
   show by competent evidence, that accused willfully and
   maliciously caused the poison to be administered to his wife
   in the manner stated.
2. Homicide—Murder—Proof—Corpus Deliciti.—In a murder prose-
   cution for poisoning accused's wife, by giving her strychnia in
   tablets as medicine, the state must prove that she took the
   poison believing it to be a salutary medicine, and died from
   the effects of it.
2. Homicide—Murder—Proof—Corpus Delicti.—In a murder prose-
   cution for poisoning accused's wife, by giving her strychnia
   as a medicine, unless the state introduce some competent evi-
   dence tending to show that accused willfully and maliciously
   administered the poison as alleged, and that she took it
   believing it to be medicine, and died from its effects, the
   court should direct an acquittal.
4. Criminal Law — Appeal — Findings — Conclusiveless.—The Su-
   preme Court will not review a judgment of conviction because
   the verdict is flagrantly against the evidence, or not supported
   by sufficient evidence, but will only inquire whether there
   was any evidence tending to show guilt.
5. Homicide—Trial—Jury Question.—Corpus Delicti.—In a prose-
   cution for murder by poison, whether decedent's death was
   caused by strychnia poisoning held for the jury.

Levering v. Commonwealth.

6. Criminal Law — Opinion — Evidence — Weight. — Where, in a murder prosecution, the coroner testified, from his examination of decedent and of the powder which evidently caused her death, that her death was caused by strychnia, the jury could give such weight to his testimony as they deemed it entitled to, though he made no post mortem examination.

7. Criminal Law—Jury Question—Corpus Delicti.—Where there is any evidence, direct or circumstantial, to establish the corpus delicti, its sufficiency is for the jury.

8. Homicide — Evidence — Sufficiency — Commission of Crime by Accused.—In a murder prosecution for poisoning accused's wife, evidence held to show that accused caused his wife to take poison, she believing that it was medicine.

9. Criminal Law—Testimony of "Accomplice"—Knowledge of Crime.—A witness saw accused put strychnia incapsules, which she knew he intended to give to his wife to kill her, and saw her take the capsules, knowing that they would kill her, but did not inform her what they contained, or take any steps to prevent her from taking them. Held, that the witness was not an "accomplice" to the crime, within the statute requiring corroboration of the testimony of accomplices, not having advised or assisted in its commission, and occupying no relation toward decedent which would make her a participant in the crime, because of her failure to endeavor to save decedent's life.

10. Criminal Law—"Accomplice"—Who Are.—The term "accomplice," while ordinarily used to designate a witness, and not the person accused, includes all who participate in the commission of a crime, whether as principal, aider and abettor, or accessory before the fact; the test for determining whether one is an accomplice being whether he could be convicted as a principal, aider, or abettor, or accessory before the fact, and if he could not be convicted, he is not an accomplice.

11. Criminal Law—Elements of Crime—Criminal Act.—To constitute one either a principal, accessory, aider and abettor, or accomplice, he must perform some affirmative act, or omit a duty to the person injured, which requires him to prevent the commission of the crime; mere acquiescence with knowledge being insufficient.

12. Criminal Law—Parties—"Accessory after the Fact"—Knowledge—Offense.—An "accessory after the fact" is he who, knowing a felony has been committed, harbors the felon, or assists him to escape punishment; and mere neglect to in-

form as to the crime or arrest the criminal will not make one an accessory after the fact.

13. Criminal Law — Testimony of Accomplices — Accomplices Within Rules of Evidence—Accessories After Fact.—An accessory after the fact is not an accomplice, within Code Cr. Prac. sec. 241, forbidding a conviction upon an accomplice's uncorroborated testimony, since Ky. St. 1909, sec. 1128 (Russell's St. sec. 3156), only makes accessories after the fact guilty of high misdemeanor, and imposes a fine and imprisonment in the jury's discretion, and permits them to be tried, though the principals are not taken or tried.

14. Criminal Law—Appeal—Harmless Error—Prejudicial Effect.— Error in treating a witness as an accomplice, and requiring her testmony to be corroborated, was not prejudicial to accused, where the witness was not an accomplice, as it improperly placed on the commonwealth the burden of corroborating her testimony by other evidence.

15. Criminal Law—Appeal—Credibility of Witnesses—Review.— The credibility of witnesses in a question for the jury, and the appellate court will not review their action thereon.

WILLIS & TODD for appellant.

W. E. HUFFAKER and R. F. PEAK of counsel.

We desire to submit to the court why the judgment should be reversed by the following points:

1. The court should have given a peremptory instruction at the close of the commonwealth's testimony.

2. The court erred to the prejudice of the appellant in the admission of incompetent testimony.

3. The court erred in giving instruction No. 3 on accomplice or accomplices in not defining what an accomplice is.

### AUTHORITIES.

Sec. 242, Criminal Code; sec. 241, Criminal Code; Miller v. Commonwealth, 78 Ky. 15; Miller & Smith v. Commonwealth, 78 Ky. 22; Craft v. Commonwealth, 80 Ky. 349; Abbott v. Commonwealth, 20 Ky. Law Rep. 727; Wilkerson v. Commonwealth, 25 Ky. Law Rep. 708; Ency. of Evidence, vol. 1, p. 112.

JAMES BREATHITT, Atty. Gen'l and T. B. McGREGOR, Asst. Atty. Gen'l for commonwealth.

GILBERT & GILBERT of counsel.

### POINTS AND AUTHORITIES.

1. The court did not commit an error in refusing to give peremptory instructions to the appellant. (Crim. Code, sec. 241; Miller v. Commonwealth, 78 Ky. 15; 110 Ky. 356, 386, 114 Ky. 572, 237; Bowling v. Commonwealth, 79 Ky. 604.)

2. The court did not commit an error in giving instruction No. 3. (Crim. Code, sec. 241; Craft v. Commonwealth, 80 Ky. 349; Patterson v. Commonwealth, 86 Ky. 313; Taylor v. Commonwealth, 10 Ky. Law Rep. 169; Howard v. Commonwealth, 22 Ky. Law Rep. 1849.)

3. No error was committed in the argument of the commonwealth's attorney to the jury. (Crim. Code, sec. 241; Commonwealth v. Murphy, 33 Ky. Law Rep. 141.)

4. No error was committed in the appellant not having been arraigned. (Crim. Code, sec. 154; Utterback v. Commonwealth, 20 Ky. Law Rep. 1515; Wade v. Commonwealth, 20 Ky. Law Rep. 1885.)

5. The rights of appellant were not prejudiced by one of the jury leaving the box during the trial, or by a remark alleged to have been made in the presence of the jury. See affidavits in the record; Crim. Code, sec. 244; Howard v. Commonwealth, 24 Ky. Law Rep. 612; Blue v. Commonwealth, 91 Ky. 200; Holly v. Commonwealth, 18 Ky. Law Rep. 441.)

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Under an indictment charging him with the murder of his wife, by administering to her strychnia, a deadly poison, committed in manner and form as follows: viz: "That he did unlawfully, willfully, maliciously, feloniously, and of his malice aforethought mix with other substances, to wit, flour and coal soot, and then and there did place same in capsules, and, the said capsules containing said poison

as aforesaid, did then and there unlawfully, willfully, maliciously, feloniously, and of his malice aforethought put and place in the room and house of the said Mary Levering, intending that the said Mary Levering should take and swallow said poison so mixed and placed in said capsules as aforesaid, by mistaking the same for salutary medicine, and the grand jurors aforesaid say that the said Mary Levering, who had theretofore been induced by said defendant to believe said capsules then containing said poison contained healthful and beneficial substances, and not then knowing that said capsules contained a deadly poison, but believing them to contain healthful and salutary substances, did take and swallow said capsules containing said deadly poison, by reason of which she became sick, and did then and there presently die"—the appellant was put upon his trial, and by the verdict of a jury found guilty of murder, and his punishment fixed at imprisonment in the state penitentiary for life. A reversal is asked (1) because there was no evidence conducing to show that appellant committed the crime charged; (2) because the court erred to his prejudice in admitting incompetent testimony; and (3) for alleged error in instructing the jury upon the subject of accomplices.

The theory of the defense is that Mrs. Levering, who was somewhat addicted to the liquor habit, and occasionally took morphine, died from strychnia poisoning, and took the strychnia with suicidal intent, and this theory finds some support in statements, reputed to be made by her more than once, that she intended to take her life, and in a note that was found lying on the dresser in the room where she was found dead, in which she said: "My dear husband:

You will be somewat surprised when you shall receive this letter. My soul will be in Heaven, this being my second attempt to end my life to-day. Tell my brother and sister good-bye for me. I have given you everything I possessed, to be yours forever. Don't permit any services in church over my body. Pray for me at grave, and meet me in Heaven. Your wife, Mary.'' But the authenticity of this note is strongly attacked by the commonwealth, and there is some evidence conducing to show that it was prepared by Levering, although the evidence as to whether it was or not is very unsatisfactory. As also tending to show that she did not take the medicine with suicidal intent is the fact that shortly before taking it she was in a cheerful humor, and her condition when found indicated that she did not expect to kill herself. It is earnestly pressed upon our attention by counsel for the appellant that there was no evidence conducing to show (1) that appellant administered to or caused his wife to take medicine that he knew was a deadly poison, but that she believed to be a healthful compound; (2) that his wife died from the effects of strychnia poison. It cannot be doubted that unless the commonwealth introduced some competent evidence, direct or circumstantial, tending to show that appellant willfully and maliciously administered or caused, in the manner stated, his wife to take strychnia poison, and that she took the same believing it to be healthful or salutary medicine, and died from the effects of it, the jury should have been directed to find appellant not guilty, because it is indispensable to sustain a conviction that both of these things should exist. Commonwealth v. Murphy, 109 S. W. 353, 33 Ky. Law Rep. 141. But it must also

be kept in mind that in criminal cases this court is
not authorized to reverse the judgment of the lower
court upon the ground that the verdict is flagrantly
against the evidence, or not supported by sufficient
evidence. We are restricted to the single inquiry
whether or not there was any evidence before the
jury conducing to show the guilt of the accused.
Vowells v. Commonwealth, 83 Ky. 193; Patterson v.
Commonwealth, 86 Ky. 313, 5 S. W. 387; Green v.
Commonwealth, 83 S. W. 638, 26 Ky. Law Rep. 1221;
Martin v. Commonwealth, 106 S. W. 863, 32 Ky. Law
Rep. 657.

For the purpose of determining whether or not
there was any evidence to support the propositions
necessary to sustain a conviction we will proceed to
examine with some care the testimony. The appel-
lant and the deceased were married in 1901. She
died on August 15, 1905; but the indictment was not
returned until May, 1907. The deceased was the
fourth wife of appellant, and owned property esti-
mated to be worth between $10,000 and $15,000. No
children were born of the marriage, nor did the de-
ceased have any children by her former marriage
with a man named Conn. There was evidence for the
accused that Levering was kind to his wife, and that
the relations between them were agreeable. After her
death a paper purporting to her last will was produced
by the appellant, in which he was made the sole bene-
ficiary of the property. The probate of this alleged
will was resisted by the relatives of the deceased,
and after a contest over its validity in the Shelby
circuit court, the paper was rejected. From the judg-
ment rejecting the paper, an appeal was prosecuted
to this court, and the judgment of the lower court

was affirmed in Levering v. Russell, 100 S. W. 840, 30 Ky. Law Rep. 1185. Soon after the decision by this court, the indictment was found, and it seems probable that criminal action was induced by the result of the controversy over the will and the subsequent disclosures made by witnesses, whose testimony will be hereafter noticed. That the paper purporting to be a will was a forgery there is no room to doubt; and it is the contention of the commonwealth that the appellant accomplished the death of his wife for the purpose of procuring her estate. The home of appellant and his wife was in Shelby county, Ky., where they lived on a farm owned by her. But appellant owned a house in Louisville, in which, although rented out, he retained two furnished rooms, at which they lived when in the city. The deceased had been occupying these rooms for some weeks before her death, and on the Sunday before she died appellant came in from the country to see her, but she did not return to her Shelby county home with him, desiring to remain in Louisville a few days longer. On the Thursday morning following appellant drove into Louisville in his buggy, going first to the home of Annie Gray, and from there to the house in which his wife was living arriving at the latter place about 9 o'clock in the morning. When he went into the room he found her lying on the bed dead. He immediately went out on the street, and the first person he saw was a Dr. Wilhoit, whom he accosted with the request that he accompany him into the house. This the doctor did, and upon making a hasty examination of the deceased, pronounced her dead, and telephoned for the coroner. The coroner, who came at once in response to the message, testifies that he examined

the body, and made a very critical examination of the person, but did not deem it necessary to use a knife in the case. Asked if he could state the cause of her death, as well as other relevant questions in connection therewith, he answered, in substance: "I will tell you—merely give you my conclusion. She was lying on her back, her arms slightly flexed across her chest; limbs drawn in; her feet slightly turned out; her jaws were tightly clenched; peculiar facial expression; very pale; the back of her body rather bluish; and thought she had died from some convulsive poison, and the further evidence led me to believe that she had died from strychnia. I found her body in the sleeping room; lamp burning; the blind was down; she was dressed in her gown. I found powder on the table in a pasteboard box. The powder was very bitter. I felt sure it was strychnia; I am familiar with it. I put it in my pocket, took it down to the coroner's office, and kept it there a great many months, but did not have it analyzed; made no analysis of anything that was found in her stomach." Asked if he could state if the powder he found in the box was strychnia, he said "I cannot mathematically swear that it was, but from long experience with strychnia—it had a crystal appearance and an intensely bitter taste—it was so perfectly evident to my mind, that I did not analyze it further."

We think the evidence of the coroner tended to show that the deceased died from the effects of strychnia poisoning. True it is not as full clear, or satisfactory as it might have been if a post mortem examination had been held, or an analysis of the contents of the stomach made; but it furnished, in connection with other testimony, sufficient evidence of the cause

of her death to warrant the jury in believing that strychnia poison caused it. At any rate, it cannot fairly be said there was no evidence that the deceased died from the effects of strychnia poisoning, because the coroner, who was a practicing physician, gave it as his opinion that this poison did produce her death; and it was for the jury to give such weight to his evidence as in their discretion and judgment it seemed to them entitled to. When there is any evidence, direct or circumstantial, to establish the corpus delicti, it is for the jury to pass upon its sufficiency. As under the instructions the jury could not have found the accused guilty unless they believed, beyond a reasonable doubt, that the death of Mrs. Levering was produced by strychnia poisoning, they must have reached the conclusion that she died from the effects of such poison administered by her husband.

The next question is, Was there any evidence to show that appellant caused his wife to take this poison under the belief that it was a beneficial medicine? Upon this point we find the following: In July, 1905, C. A. Dralle, a druggist in Louisville, sold to Mrs. Levering 60 grains of strychnia for the purpose of killing rats, and there is evidence by Annie Gray, the principal witness for the commonwealth, that Mrs. Levering sent this poison in the mail, addressed to her husband at his post office in Shelby county; that a few days after this Levering came to Louisville, went into the house of Annie Gray, and had with him a bottle of strychnia that his wife had bought and sent to him; that this strychnia he mixed with soot and put in capsules, and filled other capsules with flour and soot, at the same time remarking, with reference to his wife, "I am going to kill the ———."

There is also evidence by the same witness that he gave these capsules containing the strychnia and soot to his wife, and told her that they were pills from Dr. Brenan, and she must take them, as they would do her good. It is also testified to by Annie Gray that on the evening of the night that Mrs. Levering died, she saw her take three of the identical capsules that Levering had prepared for her, getting them out of the box in which he had put them at her house. This witness also states that when Levering came to Louisville on the morning his wife was found dead, he first went to her house, and asked if his wife was there, and when she answered in the negative, he said, "The —— is dead," and then left her house and drove to the house in which his wife was lying dead.

The evidence of this witness was in itself sufficient to establish the criminal agency. She testified to every fact essential to connect Levering with the death of his wife. But it is strongly insisted that she was an accomplice, and therefore a conviction could not be had upon her testimony alone. So that the important question to be determined in this connection is, Was Annie Gray an accomplice, within the legal acceptation of that word? She saw Levering put strychnia in the capsules; she knew that he intended to give them to his wife for the purpose of killing her. And when she saw Mrs. Levering take these capsules containing strychnia, and knew they would kill her, she did not advise or request her not to take them, nor did she inform her what the capsules contained, or take any steps whatever to save her life. It thus appears that this witness passively approved of, and silently consented to, this horrible crime, and yet she did not procure, advise, encourage,

aid or assist its commission, and so we are clearly of the opinion that she was not an accomplice. The words "accomplice," "accessory," and "aider and abettor" are often used indiscriminately and inter-changeably by courts and text-book writers on crim-inal law. But an "accomplice" may be one of the principal actors, or an aider and abettor, or an acces-sory before the fact. The word includes in its mean-ing all persons who participate in the commission of a crime, whether they so participate as principals, aiders, and abettors, or accessories before the fact. Miller v. Commonwealth, 78 Ky. 15, 39 Am. Rep. 194; Elliott on Evidence, section 2785; 1 Russell on Crimes, section 26. It is commonly applied, as in the Code of Criminal Practice, to a witness, and is not so often used in describing a person accused of crime. Usually when persons are spoken of by courts in connection with the commission of an offense, they are mentioned as principals, accessories, or aiders or abettors, although the word "accomplice" would be equally as appropriate. But if, in the course of the trial either of these persons is put upon the wit-ness stand, and a question comes up as to the neces-sity of corroborating his testimony, he will be spoken of as an accomplice, although he may in fact be a joint principal, or an accessory, or an aider and abettor. And so it is that the Criminal Code of Practice (section 241), following the precedents in this respect, speaks of an accomplice as a witness. But to constitute one either a principal, an accessory, an aider and abettor, or an accomplice he must do something; must take some part; must perform some act, or owe some duty to the person in danger that makes it incumbent upon him to prevent the

commission of the crime. Mere presence or acqui-
escence in, or silent consent to, is not, in the absence
of a duty to act, legally sufficient, however repre-
hensible it may be, to constitute one a principal, or an
accessory, or an aider and abettor, or an accomplice;
and Annie Gray did not occupy towards Mrs. Lever-
ing such relation as would make her failure to en-
deavor to save her life evidence of guilty agency in
the perpetration of the crime. Wharton on Crim-
inal Law, section 211; Bishop on Criminal Procedure,
section 1159; Plummer v. Commonwealth, 1 Bush, 76;
Butler v. Commonwealth, 2 Duv. 435; True v. Com-
monwealth, 90 Ky. 651, 14 S. W. 684; Omer v. Com-
monwealth, 95 Ky. 353, 25 S. W. 594; Cross v. People,
47 Ill. 152, 95 Am. Dec. 474; White v. People, 139 Ill.
143, 28 N. E. 1083, 32 Am. St. Rep. 196; State v.
Hildreth, 31 N. C. 440, 51 Am. Dec. 369. The test,
generally applied to determine whether or not one
is an accomplice, is, Could the person so charged be
convicted as a principal, or an accessory before the
fact, or an aider and abettor upon the evidence? If
a judgment of conviction could be sustained, then the
person may be said to be an accomplice; but, unless
a judgment of conviction could be had, he is not an
accomplice. Bass v. State, 37 Ala. 469; Common-
wealth v. Wood, 11 Gray (Mass.) 93; 1 Am. & Eng.
Ency. of L., p. 391; 12 Cyc. p. 187; Carroll v. State,
45 Ark. 539.

It should further be stated that, although Annie
Gray knew this crime had been committed, she con-
cealed from the officers of the law, and other persons,
her knowledge for more than two years, and there-
fore the argument is made that she was an accessory
after the fact, and consequently an accomplice. This

witness assigned as a reason for her failure to sooner
give information of the guilt of Levering that she
was under his influence and control, and was appre-
hensive that he would do her violence, as he had often
so threatened to do in the event she disclosed his
guilt.   She also testified that she had been advised
that a disclosure would involve her husband, and
that, overcome by fear of personal violence and dan-
ger to her husband, she refrained from giving the
information.   But as the mere failure to give in-
formation of a crime will not, in the absence of other
acts of comfort or assistance, constitute one an acces-
sory after the fact, we are clearly of the opinion that
under the circumstances of this case Annie Gray was
not an accessory after the fact.   But, passing this,
we are further of the opinion that an accessory after
the fact is not an accomplice within the meaning of
the Code provision, providing that: "A conviction
cannot be had upon the testimony of an accomplice
unless corroborated by other evidence tending to
connect the defendant with the commission of the
offense; and the corroboration is not sufficient if it
merely show that the offense was committed and the
circumstances thereof."

Under the common law an accessory after the fact
was guilty of a felony, and was subject to the same
punishment as the principal.   4 Blackstone, p. 439.
And in some jurisdictions where the common-law
rule has not been changed by statute, and in others
where it has, the courts have held that an accessory
after the fact is an accomplice in the sense that his
testimony must be corroborated.   See cases collected
in note on page 763, 5 Am. & Eng. Ann. Cases.   But
the prevailing and better practice, and the one we

approve, is that an accessory after the fact is not an accomplice requiring corroboration of his evidence. Under Ky. St. section 1129 (Russell's St. section 3156): "Accessories after the fact, not otherwise punished, shall be guilty of high misdemeanor, and fined and imprisoned at the discretion of the jury, and may be tried, though the principals be not taken or tried." It will be noticed that the statute does not define an accessory after the fact, but according to the accepted definition an accessory after the fact is one "who knowing a felony to have been committed, harbors the felon or renders him any other assistance to elude punishment. And "one is not such an accessory who merely neglects to make known to the authorities that a felony has been committed, or forbears to arrest the felon." Bishop on Criminal Law, sections 693, 694; 1 Wharton on Criminal Law, section 241; 1 Am. & Eng. Ency. of Law, p. 267. Whereas, to constitute one an accomplice, it is necessary that he should voluntarily unite with the principal offender in the commission of the crime; in other words, participate in its commission in some manner or other. Wharton's Criminal Evidence, section 440; People v. Smith, 28 Hun (N. Y) 626; Rice on Crim. Ev. section 319; State v. Phillips, 18 S. D. 1, 98 N. W. 171, 5 Am. & Eng. Ann. Cas. p. 760. It is therefore clear that an accessory after the fact is not an accomplice.

Applying the principles above set forth, and which are generally recognized and approved, it is manifest that Annie Gray could not be convicted, either as principal, aider and abettor, or an accessory before the fact, and hence she was not an accomplice. The essential things necessary to constitute her one of these offenders are lacking. Having found that

Annie Gray was not an accomplice, it was not neces-
sary that there should be any corroboration of her
evidence, within the meaning of section 241, Code
Cr. Prac., and this conclusion disposes of the prin-
cipal assignment of error, based upon the theory that,
as Annie Gray was an accomplice, there was not suffi-
cient corroboration of her evidence.   The trial court
treated Annie Gray as an accomplice, and gave to the
jury an instruction in the manner and form required
by section 241 of the Code; but this, in our view of
the case, was prejudicial to the commonwealth, and
not the accused, as it placed upon the commonwealth
the burden of corroborating her testimony by other
evidence tending to connect the accused with the
commission of the offense, when no other evidence
was necessary.

But in addition to the testimony of this witness,
there is other evidence conducing to show the guilt
of the accused.   The evidence is very satisfactory
that the will offered for probate, and in which his
wife made Levering her sole devisee, was a forgery
and a fraud, concocted and perpetrated by him.   And
the desire upon his part that his wife should die in
order that he might obtain her property furnished
a motive for the commission of the deed.   There is
evidence that on the morning his wife died, he stated
to Lewis Gray, just before leaving his home in Shelby
county, to come to Louisville, that he "would bring a
dead one home with him."   There is evidence by
Joe Cain that when he came to Louisville on the
morning his wife was found dead, he went first to
the house of Annie Gray, and asked if his wife was
in, and when he learned that she was not, he said,
"Damn her, I guess she's a dead one," and then got

in his buggy and went to the house where his wife was. This witness also testifies that he saw Levering in the house of Annie Gray filling the capsules with strychnia and soot, and heard him say, "I guess when she gets this, it will fix her," and on the morning that Mrs. Levering was found dead he saw on the dresser in her room the bottle or box that he had seen Levering have at the house of Annie Gray when he was filling the capsules. A Mrs. Ratteman testified that a week or a few days before the death of Mrs. Levering she heard Levering say that, "when she got that stuff, it will fix her." She did not know who he meant, as he did not mention any name, and was not speaking to her, but the subsequent evidence developed that this statement was made in the presence of Annie Gray, and her evidence shows that Levering was referring to his wife when he made this remark. Stanley Brown testified that on the morning after the funeral the accused "clapped his hands in the dining room, and said he was the happiest man in the world."

There are other circumstances pointing to the guilt of the accused, but we do not deem it necessary to notice them. The principal witnesses for the commonwealth are vigorously and justly denounced by counsel for the appellant, and it must be conceded that their testimony exhibits them as wicked, degraded creatures, and yet they were the most confidential friends and intimate associates of Levering. It is also forcibly urged that no man should be deprived of his liberty upon the testimony of such self-confessed falsifiers and villians, but as an all-sufficient answer to this, we say that a jury, chosen and accepted by the appellant, saw these witnesses, and heard them

Levering v. Commonwealth.

tell the story of their own depravity and Levering's crime in all its shocking details; and, having so seen and heard, that jury believed what they said, and it is not within our province to declare them unworthy of credit or belief.

We have noticed the alleged errors complained of in the admission of testimony, in the argument of counsel for the commonwealth, and in the remark made by the presiding judge during the trial, but do not deem either of them of sufficient importance to extend the opinion in discussing them.

After a careful examination of this record, we find no reason for disturbing the judgment, and it must be, and is, affirmed.