## Marcum v. Commonwealth.

(Decided January 31, 1928.)

### Appeal from Martin Circuit Court.

1. Witnesses.—One convicted of perjury is not permitted to testify in judicial proceedings, but confessed perjurer can tell truth, and, if not convicted, his evidence is competent and may be considered by jury for what it is worth.

2. Homicide.—Evidence held sufficient to sustain conviction of manslaughter.

3. Criminal Law.—Contention that eyewitness was an accomplice and that court erred in failing to instruct on necessity of corroboration, held without merit, where there was no intimation of conspiracy or that witness took any part in killing as an aider or abettor, only those being accomplices who are accessories before fact or aiders and abettors.

4. Criminal Law.—That one was an accessory after the fact does not render him an accomplice.

5. Criminal Law.—Testimony in rebuttal to contradict witness for defense claiming to be perpetrator of homicide was not objectionable on ground that it was substantive and should have been introduced in chief, where witness was not defendant and no conspiracy was charged between him and defendants; proof of his statements in such case not being competent as substantive evidence.

6. Criminal Law.—Jury is final arbiter, and, when no errors occur on trial and jury is properly instructed and there is evidence to support their verdict, court is not authorized to set aside such verdict unless it clearly appears that it was result of passion and prejudice.

W. R. McCOY for appellants.

JAMES W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Heenen Marcum and Ves Marcum were jointly indicted and tried in the Martin circuit court for the

murder of James Starr. Both were found guilty of man-
slaughter, and the punishment of each fixed at 2 years
in the penitentiary. The homicide was committed in
November, 1921. Shortly thereafter an indictment was
returned against Doc Hensley, a nephew of appellants,
charging him with that offense. Apparently he has
never been tried therefor; at least, he has never been
convicted.

Appellants were indicted in August, 1925, and their
trial took place in October, 1926. The principal witness
against them is Golden Nelson who at the time of the
trial was serving a 21-year sentence in the penitentiary
for another crime for which he had been convicted some
2 or 3 years before. Nelson testifies that at the invita-
tion of Ves Marcum he spent the afternoon of the homi-
cide upon Mossy creek with the two Marcums, L. Finley,
and Tom Whit who were making liquor. Jim Starr, two
Chapman boys, and Doc Hensley were also present, but
Hensley left about the middle of the afternoon. The
others started home about the "edge, of dark." Starr
was incensed over his mash barrels being shot up
a few days before, but the parties were in a seemingly
good humor with each other. Starr and the two Mar-
cums were about 20 or 30 steps in advance of him; he
saw Heenen Marcum and Jim Starr in a struggle over
Starr's shotgun. Starr dropped it and started to place
his hand on his pocket for his pistol when he was shot by
Ves Marcum. At that time shots rang out pretty fast,
two pistols were firing, there being eight shots fired.
Starr, the only one wounded, fell. Witness went to him
and raised his arm, but he was dead, his body riddled
with bullets; he had never drawn his pistol from his
pocket nor discharged it. Witness thinks Ves Marcum
had to shoot to save Heenen; shortly afterward Dick
Hensley came up and fired his pistol three times into the
back of Starr's dead body. Some one asked what to do
about it, and Dick said "to give it to him," (meaning to
give him the credit for killing Jim), to which the Mar-
cums replied, "He could have it if he wanted it." After
the killing witness and one of the Marcums visited a jus-
tice of the peace some 3½ miles away, and one of them
made an affidavit that Hensley killed Starr. The mag-
istrate accompanied them back and an inquest was held.
Later, witness went before the grand jury and testified
that Hensley killed Starr. He explains this, however, by
saying that he and the Marcums were closely associated;

that they suggested this defense, and he agreed to assist them. Since his confinement in the penitentiary he has developed dropsy and wants to tell the truth.

Garfield Runyon and Isaac Newsome testify, in substance, that some time after Starr's death they saw Ves and Heenen Marcum at Big Creek Gap on Blacklog Mountain discharging their pistols. Heenen had a blue steel pistol, 38 caliber, with a pearl handle, which he stated was the gun which killed Jim Starr. Ves had a 38 special and claimed that his brother was mistaken; that it was his pistol that killed Jim Starr. Witness Runyon admitted that he had made contradictory statements in reference to this matter, but says he was intimidated and caused to do so by Heenen Marcum and his uncle. Rebecca Munsey testifies that Heenen Marcum was at her house some time after the killing and said to her:

> "'Wasn't it a sight about Dock Hensley killing Jim Starr?' and I said, 'Yes it was, there were so many of you looks like you could have kept that down,' and he looked at me and said, 'Dock Hensley is as clear of that as you are. I am the man that done it,' and he pulled his gun out of his pocket and said, 'That was the death of Jim Starr.'"

Asked what she meant by "gun" she said, "a pistol, I don't know what kind it was, but it was pearl handled." On cross-examination, witness admits having been angry with Heenen Marcum some time ago, but states her present feelings are kind. The magistrate who held the inquest testifies that there were from 9 to 13 bullet wounds in the body of deceased; that his impression is that both the Marcums and Golden Nelson stated that Dock Hensley shot the deceased. Dick Harmon testifies that on one occasion he heard Heenen Marcum in a conversation with Dock Hensley, in which they were fixing up a defense for this trial, and in which Marcum stated he was up there to buy a plug horse of L. Finley on the day of the homicide and for Dock to swear what he did before, and they would get Walter and Jim Chapman to swear what they were up there for and fix it up.

Defendants testify that L. Finley wanted Heenen to gather a field of corn for him, and that they had been over in the afternoon to his place to negotiate with him; that they caught up with Tom Whit and Golden Nelson and asked them to go along with them. After looking at Finley's corn, the party was augmented by

the Chapman boys and all went up the branch. While they were standing around talking, Jim Starr came down Mossy; he was friendly to others and had some liquor, which they passed around among the boys; but was angry with some one for shooting his mash barrels, but Heenen promised to get him 200 pounds of sugar, and they were all friendly and went down the branch together. Just after they had passed the drawbars Dock Hensley came up the bank; Starr was in front on the bank considerably above Hensley; Starr cursed and said he (Hensley) had done enough for him to kill him, and throwed his shotgun in that position; they, appellants, were in 5 or 6 feet of each other; the gun fired and Hensley went down over the bank. They thought he was shot. Witnesses were 15 or 20 feet from Starr and could not prevent him from shooting. As Dock came up he was shooting, and Starr had a 32 special pistol in his hand. Dock had two 38 pistols, one in each hand, and shot as fast as he could; there was so much smoke they did not see Starr fall. Appellants had no pistol at the time. Heenen went by his home and got a pistol and went with Nelson to get a magistrate. Both of them deny the statements attributed to them by Garfield Runyon, Isaac Newsome, and Ben Harmon. Dock Hensley was introduced as a witness and with much gusto described his part in the tragedy, corroborating appellants in every detail, and saying:

"He (Starr) had a double-barreled shotgun, and when he met me . . . he throwed the gun on me and said, 'You are the G—— d—— s——- of a b—— that shot up my barrels and shot at me.'

"Q. What did you do? A. I fell over the hill.

"Q. What did you do then? A. Well, I raised, I raised kindly on my knee, he shot the shotgun and blinded me. I couldn't see for a second, and when I raised up again after he shot the shotgun I saw him 'lam' his hand in his pocket, and then I came with two pistols.

"Q. Did you shoot him? A. Yes, sir.

"Q. How many shots did you fire? A. Eleven, there was eleven I reckon in my pistols."

He denies that he shot into the dead body of deceased, or that either of the appellants did any shooting whatever. After laying proper foundation on his cross-examination, the commonwealth in rebuttal introduced

several witnesses who testified to conversations in which he had made statements contradicting his present statements, and the jury was admonished as to the effect of them. The Chapman boys were also introduced and corroborated the defendants in their statements.

The chief ground urged for reversal is that inasmuch as the principal witness for the commonwealth, Golden Nelson, is a self-confessed perjurer, it cannot now be told which of his versions is true, and that a verdict cannot be sustained upon such evidence. It is true that one *convicted* of perjury is not permitted to testify in a judicial proceeding but a perjurer can tell the truth, and, if not convicted, his evidence is competent and may be considered by a jury for what it is worth. When Nelson's evidence is thus considered together with the evidence of appellants' confessions and the rather improbable story told by them and Hensley, of Hensley's miraculous escape from the discharge of a double-barreled shotgun fired at a distance of 15 feet, of his infliction of from 9 to 13 wounds upon his assailant, and of the explanation by the commonwealth witnesses as to why they were afraid to testify against the Marcums, together with the rivalry that seems to exist between Hensley and appellants over the "credit" of having fired the fatal shot, we are not prepared to say that the verdict was not sustained by the evidence. Scalf v. Com., 195 Ky. 830, 243 S. W. 1034, is cited as authority to the contrary, but an examination of that opinion will show that the prosecuting witness had exonerated her father not only on his trial at the former term of court for the same offense, but also in a deposition at which he was not present and at a time when she was under no duress. It further appears in that case that she was uncorroborated by any fact or circumstance. Even then the court did not rest its decision on the insufficiency of the evidence, but based it on former jeopardy, hence that case is not analogous to this. It is next argued that they were entitled to a peremptory because Golden Nelson was an accomplice and his evidence uncorroborated; that at any rate the court erred in failing to instruct on the necessity of corroboration of the evidence of an accomplice.

As to this, it may be said that there is no intimation of a conspiracy or that Golden Nelson took any part in the difficulty as an aider or abettor, hence it cannot be said that he was an accomplice, which includes only accessories before the fact or aiders and abettors. And it

is not necessary to consider whether the facts detailed constituted Nelson an accessory after the fact because this if conceded would not render him an accomplice. Levering v. Com., 132 Ky. 666, 117 S. W. 253, 136 Am. Stat. Rep. 192, 19 Ann. Cas. 140; Schleeter v. Com., 218 Ky. 72, 290 S. W. 1075. It follows that the court did not err in failing to instruct the jury as to accomplices.

Complaint is made that a number of witnesses were introduced in rebuttal for the purpose of contradicting Dock Hensley. It is admitted that their evidence was material, but the argument is that it was substantive and should have been introduced in chief. In this argument counsel overlook the fact that Dock Hensley was not a defendant in this indictment, and no conspiracy was charged between him and defendants, and proof of his statement could not have been introduced as substantive evidence against appellants.

If defendants' statements are true, they have been grievously wronged, and it must be said that they are corroborated by all of the eyewitnesses but one, and that the evidence as a whole is not entirely satisfactory, but the jury saw and heard all of the witnesses, presumably knew them, and was able to judge of their credibility and of the weight to be given the testimony of each of them. The jury is the final arbiter, and, when no errors occur on the trial and the jury is properly instructed and there is evidence to support their verdict, the court is not authorized to set such verdict aside unless it clearly appears that it was the result of passion or prejudice, which does not appear in this case.

Wherefore, perceiving no error, the judgment is affirmed.