Kevin Adrian MURTAUGH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

April 10, 1979.

Jack Emory Farley, Public Defender, Linda K. West, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

AKER, Justice.

Appellant Kevin Adrian Murtaugh appeals from a judgment of conviction entered in the Campbell Circuit Court sentencing him to life imprisonment for the murder of his wife. KRS 507.020.

Appellant's wife, Diane Camm Murtaugh, disappeared on January 20, 1977. Four days later, her dismembered body was discovered buried in a snowbank in rural Campbell County. The severed limbs were not found with the buried torso.

Kevin Murtaugh initially professed ignorance of the circumstances of Diane's death. However, after being questioned repeatedly by the police, he told a radically different story. Murtaugh alleges that he found his wife in their apartment dead of a drug overdose. To spare her family the embarrassing awareness of her use of drugs, appellant decided to make her death look like murder. He put a rope around Diane's neck to make it appear she had been strangled. He borrowed a chain saw, put the body in the bathtub, and severed the hands, arms, and legs. After this grisly task was completed, Murtaugh smuggled the torso to his car in a blanket and removed the limbs in a garbage bag. The two bundles were buried separately in remote areas of the county.

At the conclusion of his narration, Murtaugh was charged with murder. He then showed the police where to find the severed limbs.

Murtaugh asserts several errors on appeal. He first contends there was insufficient evidence that his wife's death resulted from a criminal agency to support his conviction for murder. Conflicting evidence was introduced at trial as to the cause of Diane Murtaugh's death. Dr. Paul Jolly, the Chief Deputy Coroner of Hamilton County Ohio, testified that he made a post-mortem examination of the body. Dr. Jolly described injuries found on the body: there were two bruises on the head, two small tears and some bruises in the genital area, and internal and external bruises on the neck. Dr. Jolly testified that all these injuries were inflicted prior to Diane's death, because bruising would not have occurred had the heart not continued to beat after the blood vessels were damaged. Dr. Jolly expressed the opinion that the cause of death was strangulation.

Dr. Jolly recounted the findings of the toxicological analysis of Diane Murtaugh's blood. The tests revealed an alcohol concentration of .07%; they also showed the presence of a depressant known as placidyl. Dr. Jolly stated that the four milligram percent concentration of placidyl present in the body is a concentration capable of producing death in about 2% of the human population. He repeated his opinion that death was caused by strangulation rather than by a drug overdose.

The defense called two expert witnesses on the issue of cause of death. Dr. Charles Winek, a toxicologist, testified that the level of placidyl found in Diane Murtaugh's body could have caused her death. Dr. Winek was unable to state whether placidyl had in fact caused her death.

Dr. Cyril Wecht, Coroner of Allegheny County, Pennsylvania, testified that he had reviewed the autopsy findings on Diane Murtaugh and had concluded that she died of an overdose of placidyl.

Murtaugh contends the trial court erroneously overruled his motion for a directed verdict of acquittal. He relies on the established proposition that the evidence proving the corpus delicti must be more consistent with guilt than with innocence; the prosecution must prove the cause of death with competent, probative evidence. Appellant submits that his conviction rests on mere suspicion or conjecture, because there was no evidence connecting him with his wife's death.

While it is true that mere suspicion will not sustain a conviction, the jury's verdict cannot fairly be described as one based on conjecture. Therefore, the numerous cases cited by appellant are inapposite. The jury had before it the testimony of Dr. Jolly, who performed the autopsy, that Diane was strangled to death. It also heard testimony to the effect that Diane and Kevin Murtaugh did not get along well; that they had separated for a period of time and had been reconciled a very short time before Diane's death; that while they were separated, Diane went to Texas with another man; and that Kevin once broke the door to Diane's apartment. The bruises and lacerations on Diane's body were evidence of an assault on her. Finally, the jury had before it Kevin's admitted dismemberment of his wife's body. His attempt to conceal her death could reasonably be interpreted as circumstantial evidence of guilt. See *Fugate v. Commonwealth*, Ky., 445 S.W.2d 675 (1969).

Although there was evidence which indicated that death may not have been caused by criminal agency, the jury was entitled to weigh the conflicting evidence. "When there is any evidence, direct or circumstantial, to establish the corpus delicti, it is for the jury to pass upon its sufficiency." *Levering v. Commonwealth*, 132 Ky. 666, 117 S.W. 253 (1909). The rule has been more recently stated as follows: "If under the evidence as a whole it would not be clearly unreasonable for a jury to find a defendant guilty, he is not entitled to a directed verdict of acquittal." *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977). The verdict of the jury in this case was not unreasonable.

Murtaugh next asserts the trial court erred in failing to suppress his admission that he dismembered his wife's body. He argues that he was unlawfully detained for questioning by the police, and that the admission, being the fruit of that unlawful detention, should not have been introduced in evidence.

On the day of Diane's funeral, Murtaugh was asked by the police to accompany them to his apartment. He willingly did so. When the officers completed their search of the apartment, they asked him to go to the Commonwealth's Attorney's office, and again he cooperated with them. At the Commonwealth's Attorney's office, Murtaugh was read his rights and informed he was a suspect, but he was not arrested. Several hours later, Murtaugh told police that he had cut his wife's body up and hidden it. He was then arrested and charged with murder. Later, he signed a written statement detailing the circumstances of the death and dismemberment and then voluntarily videotaped the same statement. The videotape was offered in evidence by the prosecution.

Appellant does not argue that his Fifth Amendment rights were violated, and it is undisputed that he was informed of those rights in compliance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). His argument goes only to the Fourth Amendment protection against unreasonable search and seizure. We find it unnecessary to determine whether Murtaugh was illegally detained. Even a confession obtained following an unlawful detention may be admissible evidence, provided the statement was "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9

L.Ed.2d 441 (1963). See also *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The sole question relevant to a determination of whether Murtaugh's statement was admissible under the Fourth Amendment is whether that statement was voluntarily given. "The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case," *Brown v. Illinois*, supra, 422 U.S. 590, 95 S.Ct. at 2261.

The trial court held an extensive in-chambers hearing on the voluntariness of Murtaugh's admission and determined that the admission was an act of free will. The trial court considered all the circumstances surrounding the making of the statement, including Murtaugh's cooperative attitude and his willingness to accompany the police to the courthouse, his background and relatively high intelligence, and the absence of coercion by investigating officers. We are unable to say that the findings of the trial court were clearly erroneous.

Murtaugh's third assignment of error goes to the admission into evidence of the saw with which he severed his wife's limbs. He argues that he was charged with murder, not with dismemberment, and that the saw had no probative value on the issue of whether he committed murder. Appellant submits that introduction of the saw constituted prejudicial error.

We agree that the saw was not relevant to any issue in the case, inasmuch as Murtaugh was not charged with murder by dismemberment, and that it should not have been allowed into evidence. However, we cannot see how Murtaugh was prejudiced by its admission into evidence. He freely admitted that he strangled and dismembered Diane's body. Since the act of dismemberment by chain saw is so disgusting and reprehensible by its very nature, it is unlikely that the admission of the chain saw into evidence intensified those emotions to any appreciable extent in the minds of the jurors. Therefore, we decline to reverse Murtaugh's conviction on that basis.

Appellant's final contention is that the trial court erroneously admitted hearsay testimony. Detective John Conley testified that Ronald Moran, the man Diane dated during her separation from her husband, related several details about the Murtaughs' relationship. Moran said Diane told him that Kevin beat her up and threatened to kill her. Moran also claimed that Diane had tried to take an overdose of pills while they were dating.

No objection was made to the introduction of this hearsay testimony. The probable reason for that silence is apparent: part of the evidence tended to support the defense theory of drug overdose. Because the issue was not raised in the trial court, no error was committed. See *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219 (1977).

The judgment is affirmed.

All concur.