## Black v. Commonwealth.

(Decided Oct. 6, 1933.)

548

A. W. MANN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, B. W. Black, at the time of the occurrences herein involved, was a duly elected qualified and acting justice of the peace in Boyd county. The grand jury therein returned an indictment against him wherein he was accused of misfeasance in office. Its sufficiency is not questioned, nor do we detect any defect in it. At his trial, after entering a plea of not guilty, he was convicted and punished by a fine of $100. In the judgment pronounced thereon his office was declared vacant, as is prescribed in section 3748 of Carroll's Kentucky Statutes. From the verdict and the judgment pronounced thereon he prosecutes this appeal, and urges by his counsel as grounds for reversal: (1) That the court erred in the admission of evidence over his objections and exceptions; (2) that it erred in overruling his motion for a peremptory instruction of acquittal, and (3) that it erred in failing to properly instruct the jury—each of which will be determined in the order named.

1. The evidence which it is insisted constituted the error complained of in ground 1 was the admission

of the affidavit of Leslie Edmond, alias Harry Austen. But before determining the merits of this ground the facts charged and proven by the witnesses for the commonwealth should be stated. Hobart Cooksey was the elected, qualified, and acting constable in appellant's magisterial district, and the two appear to have been quite active in their efforts to inaugurate prosecutions for violations of liquor prohibitory laws, in order to collect and jointly appropriate the statutory rewards for the apprehension of those convicted for violating such laws. One Frosty Talbert, who lived in Ashland, Ky., was reputed to be a regular violator of them, and defendant was desirous to obtain evidence thereof by searching his premises; but no one could be found to make the necessary affidavit as a basis for a search warrant. It was charged in the indictment that appellant procured Leslie Edmond, who also had the reputation of being a bootlegger, to make an affidavit for the issuing of a search warrant for the premises of Frosty Talbert, in the fictitious name of "Harry Austen," and which affidavit was prepared by appellant in his office and in the presence of Austen. In it, as filled out, he, as "Harry Austen," was alleged to be a resident of Greenup, Ky., and that a few days prior to that date he had purchased from Frosty Talbert, in his residence that was proposed to be searched, a gallon of intoxicating liquor, and paid him therefor $3.50; the fact being that the name of the affiant was not "Harry Austen" and which appellant well knew; nor did he reside in Greenup, Ky., but was well known by appellant as "Leslie Edmond" and to be a resident of Ashland, Ky., and that the affidavit was false in all of its terms and statements.

The search warrant was issued upon that affidavit and afterwards executed by the constable, assisted by J. L. Campbell, a handy member of the posse comitatus, who was summoned by the constable for that purpose and who loitered around the office of the constable in order to be selected by him for such assistance, and who, also, it would seem, shared in the division of the remuneration obtained for such "official vigilance" in the enforcement of the law.

At the trial Edmond stated that appellant requested him to sign a blank printed form for such an affidavit, which he at first hesitated to do, but that appellant ex-

plained to him that he could sign the fictitious name of "Harry Austen" to it and that he (appellant) would fill in the blanks therein so as to show that Harry Austen, the purported affiant, was a resident of Greenup, Ky., and all of which was later done by appellant. Witness also stated that he never purchased any liquor from Frosty Talbert; nor, so far as his evidence shows, was he ever in the home of Talbert. He furthermore stated that he did not reside in Greenup, Ky., but in Ashland, Ky., and that appellant was well aware of that fact and also of his true name.

The constable testified that, he received the search warrant with a copy thereof, as well as the original and a copy of the affidavit upon which it was issued, on one Monday morning, and that on the day before (Sunday) he was in the office of appellant when the latter told him to leave the room, "as there is a man coming in here to sign an affidavit for a search warrant and I don't want you to see him"; that on the next day when he went to the office he met appellant, who said: "That man is in the court room and you can't see him. I can't even let Fred Black see him." And that he (witness) then went away, and within a short time he went back to the office, which was near the one of appellant, and the latter came into his (witness') office, and said to him, "You stay here until this man goes away," and that soon thereafter appellant gave him the warrant and other papers to be executed on Frosty Talbert.

The witness Campbell testified that he had been the willing member of the posse comitatus to assist the constable in the execution of such process for more than a year, and that on the morning of the day when the affidavit was obtained and the warrant issued he (witness) was in appellant's courtroom when the latter took the witness out in the hall and told him he wanted to talk to Edmond, who was then present in appellant's office, and that after a short time appellant came out of his office and said to witness: "Mouse (a nickname for Edmond) is here and wants to make a search warrant for Frosty Talbert's place and make it under an assumed name," that appellant asked witness: "What do you think?" to which he replied that he was not capable of advising, but stated that "I'd make him swear to it and the blame would be on him then, looks like"; that appellant then went back to his office and in a short

while came into the courtroom and procured a blank affidavit and later came back and said: "By dry, I got it."

Appellant denied in toto all of the evidence of those three witnesses, and stated that a perfect stranger appeared in his office and inquired if he was a justice of the peace. Receiving an affirmative answer, the stranger then stated to him that his name was Harry Austen and that he wanted to procure a search warrant for the home of Frosty Talbert, and that he voluntarily stated the facts contained in the affidavit. However, he introduced no such person at his trial, nor did he, so far as this record discloses, make any effort to ascertain if there was any such person in Greenup, Ky., or elsewhere.

The testimony complained of as supporting ground 1 is the introduction of the affidavit for the search warrant, it being claimed that it was not the original, but only a copy, which was not officially certified and that the absence of the original was not properly accounted for. However, it appears (and which appellant did not deny) that he customarily (and which he did in this case) delivered to the constable a duplicate affidavit and search warrant in such cases to be delivered to the defendant in the warrant at the time it was executed, and it was the duplicate copy so delivered to the constable that was introduced at the trial; it being shown that the original had become, at least temporarily, misplaced. But if not so, then the incompetency of the testimony was cured by defendant taking the stand and practically admitting that the complained of paper was the exact duplicate of the affidavit made by the alleged "Harry Austen," and upon which the search warrant was issued. Under such circumstances appellant waived the prejudicial effect of the introduction of the copy, conceding it to be incompetent, and which, if it were so without such waiver (a question not decided), might have served his purpose on this appeal. But having so waived the alleged incompetency, he cannot now complain of the alleged error, conceding it to be such.

2, 3. Grounds 2 and 3 are rested upon the same contention and they will be discussed and disposed of together. It is strenuously insisted in support of them that the court erred in not instructing the jury under

the provisions of section 241 of the Criminal Code of Practice with reference to the weight of the testimony of an accomplice, since it is also contended that Edmond, who made the affidavit for the search warrant under the fictitious name of "Harry Austen," was an accomplice within the meaning of that section; and that there was no other testimony but that given by him to connect appellant with the crime for which he was being tried. However, we do not agree with counsel that there was no such corroborating testimony, since that given by the constable and by Campbell is, according to our view, strongly corroborative of the testimony of the alleged accomplice. Conceding, however, that the testimony of those witnesses did corroborate the testimony of Edmond, still it was the duty of the court to instruct under the section of the Criminal Code of Practice, supra, if the latter was in fact an accomplice within the meaning of that section. The decisive question, therefore, is: Did his participation in the making of the false affidavit for the search warrant make him an accomplice of appellant in the commission of the crime charged in the indictment?

Our investigation forces us to give a negative answer thereto. In the case of Levering v. Commonwealth, 132 Ky. 666, 117 S. W. 253, 257, 136 Am. St. Rep. 192, 19 Ann. Cas. 140, in giving the true definition of an "accomplice," within the meaning of the involved section of the Criminal Code, we said: "The test, generally applied to determine whether or not one is an accomplice, is.: Could the person so charged be convicted as a principal, or an accessory before the fact, or an aider and abettor upon the evidence? If a judgment of conviction could be sustained, then the person may be said to be an accomplice; but, unless a judgment of conviction could be had, he is not an accomplice. Bass v. State, 37 Ala. 469; Commonwealth v. Wood, 11 Gray (Mass.) 93; 1 Am. & Eng. Ency. of L., p. 391; 12 Cyc. p. 187; Carroll v. State, 45 Ark. 539."

That definition was approved in the later case of Elmendorf v. Commonwealth, 171 Ky. 410, 188 S. W. 483, 489, and in doing so the opinion said: "If a judgment of conviction can be sustained upon the evidence against one as a principal, an accessory before the fact, or an aider or abettor of a crime, such person is an accomplice. If such conviction cannot be sustained, such

person is not an accomplice." The definition in the Levering Case was referred to, quoted, and approved in the case of Nicoll v. Commonwealth, 169 Ky. 491, 184 S. W. 386. Other domestic cases will be found in note (3) in the annotations to the section supra of the Criminal Code of Practice. Among them are Raum v. Board of Council, 155 Ky. 690, 160 S. W. 255, in which it was held that one who procured whisky for another was not guilty of violating a prohibition statute prohibiting the sale of intoxicating liquor and was not, therefore, an accomplice of the seller from whom he purchased the whisky for his principal. Of like import are the cases of Dunaway v. Commonwealth, 239 Ky. 166, 39 S. W. (2d) 242; Lewis v. Commonwealth, 201 Ky. 343, 256 S. W. 710; and Conn v. Commonwealth, 234 Ky. 153, 27 S. W. (2d) 702. In the latter case, and in those cited therein, we held that one guilty of subornation of perjury was not an accomplice of the one who committed the perjury as a result of such subornation.

In the case of Solomon v. Commonwealth, 208 Ky. 184, 270 S. W. 780, the rule was announced, following other cases cited in that opinion, that the receiver of stolen property, knowing it to have been stolen, is not an accomplice within the meaning of section 241 of the Criminal Code of Practice, with the thief who stole the property. But in the case of Grady v. Commonwealth, 237 Ky. 156, 35 S. W. (2d) 12, an exception to that rule was recognized where the receiver of the stolen property was also shown to have conspired with the thief who actually stole it for him to commit the larceny, and which is eminently sound. But the general rule laid down in the Solomon Case, and others preceding it, as unaffected by such exception, was again approved in the Grady opinion. We could continue the list of cases announcing the principle that an accomplice, within the meaning of the section of the Criminal Code of Practice, supra, must be, and is, only one who could be convicted as a principal upon the evidence heard against the one on trial; but we conclude that the cases referred to are sufficient to establish that well-settled principle, and for which reason we will pursue the discussion no farther.

The conclusion so reached is fortified by contemplating the intent and purpose of the rule of practice embodied in section 241 of our Criminal Code of Prac-

tice, whether it be legislatively or judicially declared. That purpose was and is to guard against the possible conviction of the defendant on trial upon false testimony of one equally guilty with him in committing the same offense for which he is placed in jeopardy. Self-protection, which is a dominant element in human nature, produces a strong incentive for a witness equally guilty with the one on trial, and who is, therefore, a true accomplice, to place the entire guilt upon another and to shield himself from any participation therein. The rule was evidently enunciated to protect the defendant on trial from conviction upon such uncorroborated testimony. But the incentive to give false testimony is not present when the alleged accomplice could not be convicted of the offense for which his alleged principal is accused, although the facts testified to by the alleged accomplice might embrace a totally distinct offense committed by the witness; but which latter fact would rather tend to establish the truth of his testimony.

Applying the declared rule to the facts of this case, it is clear that the alleged accomplice in this case was not one within the purview of the section of the Criminal Code of Practice referred to, so as to require an instruction to the jury in accordance therewith. The crime for which appellant was being tried is one that cannot be committed except by an officer, and the alleged accomplice not being such could not be convicted thereof on the testimony heard against appellant howsoever much he may be guilty of other infractions of the law, because of his alleged participation as disclosed by his testimony. It is only one holding an office against whom the offense is leveled, and which is punishable in this state, by section 3748, supra, of our Statutes. Illustrations of the same principle are found in the many cases involving the question whether a prosecutrix was an accomplice with the male defendant in an indictment growing out of unlawful sexual intercourse; but we deem it unnecessary to catalogue them, since they are bottomed upon the same convincing rule that prevents the alleged accomplice in this case from being such.

An aider and abettor may be one who assists his principal in the commission of a crime by becoming the instrumentality by which the latter may commit it, and which is the situation of the witness Edmonds, alias

Harry Austen, in this case. He was the instrumentality and the means employed by appellant in committing the misfeasance with which he was indicted and tried; but it does not follow that he thereby became an "accomplice" of appellant, within the meaning of section 241 of the Criminal Code of Practice, so as to require the instruction therein called for.

Having arrived at that conclusion, it necessarily follows that the court did not err in failing to so instruct the jury, and there being evidence abundantly sustaining its verdict, the judgment is affirmed.