### HALL v. COMMONWEALTH.

Court of Appeals of Kentucky.

April 25, 1952.

Jack E. Fisher, Paducah, for appellant.

A. E. Funk, Atty. Gen., Frankfort, Walter C. Herdman, Asst. Atty. Gen., for appellee.

LATIMER, Justice.

Appellant was convicted of the crime of robbery and sentenced to two years in the state penitentiary. He is here urging reversal on the grounds: (1) that he was entitled to a directed verdict; (2) error in refusing to sustain motion to discharge the jury and declare a mistrial; (3) error in admitting evidence of the witness, Roy McKinney.

We have in this record a complicated set of facts. In order properly to bring them to attention they will be set out in two groups: first, those dealing with the circumstances before opportunity for the alleged robbery, and, second, those following.

One of the chief witnesses for the Commonwealth was Roy McKinney. It is from him we get the story, with slight contradictions, of the happenings before the alleged robbery. He with appellant, Hall, Jack Driver and Gaylen Hall, now deceased, a brother of appellant, were driving toward Marion for the purpose of obtaining medicine for appellant's mother. They were flagged by Sam Huff. Appellant, who was driving the car, stopped and picked up Huff

who asked that he be taken to Fredonia to purchase some groceries. This was done. Upon reaching Feagan's Grocery store in Fredonia, appellant, his brother Gaylen and Huff entered the store. It appears that Huff was drunk and while in the Feagan store undertook either to establish credit or to buy on credit. The flour and lard which Huff had undertaken to purchase had already been placed in the car. After the refusal to sell on credit, the merchandise was returned to the grocery store, and the five men left together. When they approached a place known as Duvall's Place, appellant and Huff got out of the car and the other three proceeded. However, appellant denies this and states Huff got out alone. This place was not far from the "old Turley house" where about ten days later the body of Huff was found. His body was bruised and the pockets of his shirt were torn off. Apparently he had been dead for a number of days. He had one billfold containing $69.53 in his hip pocket and another empty billfold. Later, appellant, Roy McKinney and Jack Driver were indicted for robbing Huff on or about the 27th of December, 1949, which was the day on which the above took place.

This leads us now to the second set of facts which had to do largely with the acts of appellant after the 27th of December. The evidence shows that soon after appellant and Huff left the car, Gaylen Hall, the younger brother who at that point took over and drove the car, Roy McKinney and Jack Driver proceeded down the road leaving appellant and Huff behind. Soon thereafter Jack Driver got out at a neighbor's house and McKinney, after about 45 minutes, returned to the appellant's home and found that appellant had arrived there ahead of them. Appellant, then, with McKinney drove to Marion to see a doctor relative to appellant's mother. On their way back home McKinney got out of the car at his home and appellant proceeded on to his home. Later that evening appellant picked up McKinney and took him to appellant's home where some conversation was had about the two of them going to St. Louis to attend a mechanical trade school. It appears that the two had been talking for some little time about this. Proposal was made by one or the other that they leave for this school. McKinney says appellant made the proposal. Both appellant and his mother say McKinney made the proposal. At any rate, they decided to go and did start about 7:00 that evening. They left in a 1941 Dodge that belonged to appellant's brother. Appellant says that they changed their minds and instead of going to St. Louis went to Gary, Indiana, because he thought the car was not in good enough shape to make the trip to St. Louis. After driving all night, they reached Gary in the morning. On that day they proceeded into Chicago, where, according to McKinney, appellant bought a 1949 Ford for the price of something over $1,400 and paid for it in cash. Appellant says that the car was purchased by his brother who at that time lived in Gary and that this brother went to Chicago with him and McKinney and purchased the car and paid for it in cash. He is corroborated in this by the brother and a sister from whom they say that the brother borrowed $200 in order to complete the amount necessary for the purchase. For some reason, the car was put in the name of Roy McKinney. Appellant says because his brother was under 21 years of age and the car could not be licensed in his name. Anyway, after a short while McKinney and appellant left Gary and drove the two cars to Evansville, Indiana, where the 1941 Dodge was surrendered to the Finance Company, appellant says pursuant to instructions of his brother. Later McKinney and appellant proceeded to St. Louis in the newly purchased 1949 Ford where they remained for some time. They later returned to Louisville and from Louisville to Hopkinsville where they left the car in a garage and proceeded on home by bus. Later they returned for the car and drove again to Gary where the license was transferred to the brother of appellant.

At the trial, Mr. Feagan from whom Huff attempted to purchase the flour and lard testified that Huff was drunk and while in the store trying to establish credit he observed that Huff had three billfolds with paper money in them and one large roll of bills in his shirt.

W. B. Loyd, a banker connected with the Peoples Bank in Marion, testified that on the 28th day of October, 1949, which was approximately two months before the incident here, he waited on Mr. Huff and that on that day Huff withdrew two thousand four hundred forty four dollars and a few cents, mostly in 20 dollar bills. McKinney stated that after they had left Feagan's Grocery and before Huff and appellant got out that appellant made some remark about Huff's money. Allan Adcock, a longtime friend of appellant, testified that appellant had told him how he and some other boys had old man Huff out on a drinking party, that he and Huff got out of the car at the "old Turley place"; that the other boys went home; that he got about $1,900; and that he and Roy McKinney "took off"; and that he purchased a car for about $1,400 and put it in McKinney's name.

These facts with the contradictions were presented to the jury which returned the verdict above.

■ We shall first consider the contention that the court erred in refusing to discharge the jury and declare a mistrial. It appears that the witness Adcock, upon leaving the witness stand in a side remark, stated that Chastain Hall, appellant's brother who had testified for the defense, was bootlegging. The jury was not admonished nor charged to disregard the statement. It is insisted that appellant's rights were materially prejudiced by so permitting the remark to go to the jury.

In the first place, the remark did not concern appellant in any manner. It was directed at one of his brothers. While improper, we cannot see how same could prejudice the minds of the jury against appellant especially so in the light of the immateriality of the statement.

■ It is further contended that the evidence of Roy McKinney was not sufficiently corroborated to take the case to the jury, on the ground that McKinney was a codefendant and an accomplice. The Commonwealth takes the position that McKinney was not an accomplice and further, even though he be considered an accomplice, the testimony of Adcock is sufficiently corroborative. In Miller v. Commonwealth, 240 Ky. 355, 42 S.W.2d 523, 524, we find this definition of an accomplice: " '* * * one who knowingly, voluntarily, and with common intent with the principal unites in the commission of the crime, either by being present and joining in the criminal act, by aiding and abetting in its commission, or, not being present, by advising and encouraging the act.' Baker v. Commonwealth, 212 Ky. 50, 278 S.W. 163". There is no evidence that McKinney helped or participated in the commission of the crime. An accomplice is one who could be convicted as principal upon evidence heard against accused. Black v. Commonwealth, 250 Ky. 547, 63 S.W.2d 598. An accomplice is one who participates in the commission of a crime along with another as a principal, aider, abetter, or accessory before the fact. Wilson v. Commonwealth, 255 Ky. 632, 75 S.W.2d 202. An accessory after the fact is not an accomplice. Keith v. Commonwealth, 265 Ky. 806, 97 S.W.2d 820. One jointly indicted is not necessarily an accomplice. The mere fact that a person is charged in connection with others does not make him an accomplice. In order to make him an accomplice it is necessary that his criminal participation in the crime charged should be shown by the evidence. Anderson v. Commonwealth, 181 Ky. 310, 204 S.W. 71; Levering v. Commonwealth, 132 Ky. 666, 117 S.W. 253; Boyd v. Commonwealth, 141 Ky. 247, 132 S.W. 423.

We think the Commonwealth right in the position that McKinney was not an accomplice and further, even conceding that he was, the testimony of Adcock was sufficient corroboration. Having so concluded, it becomes immediately obvious that appellant must fail in his contention that he was entitled to a directed verdict.

The judgment is affirmed.