John HOLLAND, Elvin Lewis, Tim Lewis
and Everett Miller, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 6, 1959.

Rehearing Denied May 15, 1959.

J. C. Helton, Julian H. Golden, Pineville, John Y. Brown, Lexington, for appellants.

Jo M. Ferguson, Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

John Holland, Elvin Lewis, Tim Lewis and Everett Miller are appealing from a judgment sentencing each of them to life imprisonment in accordance with a verdict finding them guilty of the murder of Roy Gambrel. As grounds for reversal they assert that the evidence was not sufficient to sustain a conviction, and that the court erred in not giving accomplice instructions.

Around 11:00 p. m. on June 8, 1958, Gambrel and his wife returned to their home, a short distance from Pineville, after attending a movie. They were riding in a

panel truck. Gambrel turned into a neighbor's driveway, backed out, and parked his truck headed in the direction of Pineville, across the road from his home. He and his wife crossed the road and were about to enter their front yard when a fusillade of shots rang out, from behind the truck and from other points across the road. Gambrel was hit in four places by .00 buckshot, and he fell and died on the front porch of his home. Other shots hit the dwelling, and the fence in front. There was some evidence that some of the shots came from .45 and .38 pistols.

The case is a plain one of murder from ambush. However, the appellants maintain that there was not sufficient evidence to convict them as the perpetrators.

We will consider first the evidence as it relates to Everett Miller and the Lewis brothers. In summary, the evidence was sufficient to support a finding of these facts: As Gambrel was parking his truck, Miller's car drove by, and stopped a short distance away. The car door slammed, and within a few seconds the shots were fired. The shots came from several points, showing that several persons were doing the shooting. Miller had been at a neighbor's house, with his car, earlier in the evening, and had driven back and forth in front of the Gambrel house a number of times that day. Miller and the two Lewises had been at Holland's home most of the evening; they had left around 10:00 p. m. and had returned somewhere around 11:00 p. m.; upon their return one of the Lewises said, "We got one of them," and further said "he was on the porch" or "he fell on the porch." The Lewises and Miller appeared to be worried and nervous, and at Holland's request the Lewises turned over to him the .45 pistols they had been carrying. Earlier in the evening Holland had instructed one of the Lewises in the operation of a sawed off shotgun. The Lewises had a motive for killing Gambrel because a year or two previously Gambrel had killed their brother.

As concerns Holland's participation in the crime, there was this evidence: His home was the focal point of the evening's activities by Miller and the Lewises. Early in the evening he had instructed one of the Lewises in the operation of a shotgun. Also, he had asked some visitors not to leave because "I may need some witnesses." After the Lewises and Miller left he made statements indicating that he knew what time to expect them to return. After their return he put their pistols away. Both during their absence and after their return he told other persons in the house that the police probably would soon arrive, and he cautioned them to tell the police that no one had left the house that night; that "We must stick together." He had a sawed-off shotgun and another shotgun in the house, and some .00 buckshot shells. The statement by one of the Lewises, upon return to the Holland home, that "We got one of them," seems to have been addressed to Holland, in the nature of a report, and Holland appeared to know who had been "got," and what activity had taken place, because he asked no questions and sought no explanation. Holland had been with the Lewises' brother on the occasion when the latter was killed by Gambrel, and had been the chief witness against Gambrel on his trial.

We think the evidence may be considered as pointing unerringly to the facts that Miller was present at the time and place of the shooting, because his car had arrived and stopped a few seconds before the shooting began; that the Lewises were there also, not only because of the statement by one of them that "We got one of them" and "He fell on the porch," but because they left the Holland home and returned to it at the same time as Miller; that Holland was directing or "masterminding" the crime because his home was the headquarters for the Lewises and Miller; he owned shotguns and shells of the type used to kill Gambrel and had instructed one of the Lewises how to operate a shotgun; he had expressed the need for

witnesses; he seemed to be fully aware of where the Lewises and Miller had gone and when they would return; he expected the police to arrive and cautioned the others present as to what to tell the police; and when the Lewises reported to him that "We got one of them" he appeared to be fully aware of what they were talking about. The whole tenor of the evidence is that Holland, Miller and the Lewises were engaged in some joint project, and it is a reasonable conclusion that the project was to kill Gambrel.

▌ It is not required, in order to sustain a conviction based on circumstantial evidence, that the evidence be such as to exclude every possibility of the defendants' innocence; it is sufficient if all of the circumstances, when considered together, point unerringly to the defendants' guilt. Hendrickson v. Commonwealth, Ky., 259 S.W.2d 1. It is our opinion that the evidence here was not as consistent with innocence as it was with guilt, and that it fairly and reasonably connected the defendants with the commission of the crime. Accordingly, we hold that the evidence was sufficient to sustain the conviction.

In the preceding discussion of the evidence we have excluded deliberately the testimony of Roy Gambrel's mother, Mary Alice Gambrel. She was not used as a witness by the prosecution, but was called by the defense as a purportedly hostile witness. She had been sitting on Gambrel's front porch when the killing took place, and she testified that she saw Holland, the Lewises, and Miller, and they did the shooting. However, from her testimony as a whole, and in view of previous statements made by her to the police, one receives a strong impression that her identification was based solely upon her belief that the defendants had been planning to kill her son, and not upon actual sight of the defendants at the time of the killing. Apparently, the purpose of the defense in putting her on the stand was, by showing her testimony to be unbelievable, to discredit all of the evidence for the Commonwealth. However, we cannot say as a matter of law that her testimony was incapable of being believed; and in any event, even if her identification of the defendants was imaginary it did not destroy the probative value of the Commonwealth's evidence.

▌ The appellants contend that the trial court should have submitted to the jury the question of whether the witnesses Clayton Queener and Bill Kincaid were accomplices, with an instruction that if they were found to be accomplices a conviction could not be had upon their testimony unless corroborated by other evidence. Criminal Code of Practice, § 241. These two witnesses were present at the Holland home on the afternoon and night of the day of the killing (as also were George Smith, Ike Smith and Charles Eversole), and they testified as to what happened and what was said. There is absolutely no evidence, other than their mere presence in Holland's home, to indicate that Queener or Kincaid participated, aided, assisted, advised or encouraged in any way the commission of the crime. There is nothing to show that they had any knowledge that the crime was to be committed, or that Gambrel's name was ever mentioned. They performed no overt acts and made no statements that in any way could be considered participation, encouragement, or even knowledge. Under these circumstances, it was proper for the court to hold as a matter of law that they were not accomplices. See Head v. Commonwealth, Ky., 310 S.W.2d 285; Hall v. Commonwealth, Ky., 248 S.W.2d 417. The fact that the two witnesses may have been under indictment with the defendants as co-conspirators would not of itself require the giving of an accomplice instruction. Anderson v. Commonwealth, 181 Ky. 310, 204 S.W. 71; Hall v. Commonwealth, Ky., 248 S.W.2d 417.

The judgment is affirmed.