**COMMONWEALTH of Kentucky, Appellant,**

**v.**

**R. C. ALLEN and Richard C. Sweeney, Appellees.**

Court of Appeals of Kentucky.

May 23, 1969.

John B. Breckinridge, Atty. Gen., John B. Browning, Asst. Atty. Gen., Frankfort, for appellant.

Thomas F. Marshall, Frankfort, J. Bruce Miller, Louisville, for appellees.

EDWARD P. HILL, Judge.

The Commonwealth appeals from a judgment entered on a directed verdict of acquittal. A certification of the law is requested.

The indictment contained two counts charging appellees with "aiding and abetting" another in the sale of unregistered securities (stocks) in violation of KRS 292.340. Specifically they were charged with aiding and abetting one William D. Barnes in selling stock in Best Books, Inc., to Sam Rayhill, Jr., and in Classic Paperbacks, Inc., to Allen P. Baskett. William D. Barnes was never indicted.

In directing a verdict of acquittal, the trial court was of the opinion that Barnes was an accomplice of the two appellees

and that there being no corroborative evidence, other than that of accomplice Barnes, the proof was insufficient to convict. The trial court indicated in his comments to the jury that he was also convinced that the two transactions mentioned in the indictment were "isolated" transactions and were made "pursuant to an offer directed to not more than ten people" and that such transactions were exempt under the statute. The appellees maintain on this appeal that the trial court was entirely correct in his conclusions.

Appellant argues that (1) this is a proper case for a certification of the law as authorized in KRS 21.140(3); (2) Barnes was not an accomplice, so it was unnecessary that his evidence be corroborated; (3) the securities sold were not exempt under the statute; and (4) the evidence was sufficient to convict the appellees on the idea that appellees were "constructively present" at the time of the sales, amounting to "aiding and abetting" Barnes.

Before quoting the pertinent statutes and discussing the law of the case, a brief recitation of the facts should be given.

A copy of the articles of incorporation of Best Books, Inc., shows that appellee Robert C. Allen was the sole incorporator; that the corporation would begin business with a capital of $1,500, with 10,000 shares of stock subscribed by Robert C. Allen.

The articles of incorporation of Classic Paperbacks, Inc., likewise prove that Robert C. Allen was the sole incorporator; that this company would begin business with $9,000 capital; that 1,200 shares were owned by Robert C. Allen, and 18,000 shares were owned by Best Books, Inc.

Robert C. Allen was installed as president of both corporations.

During June and July 1966, Richard C. Sweeney interested William D. Barnes, a schoolteacher, in selling stock, first in Even-Glow Charcoal, Inc., and later the stock of Best Books, Inc., and Classic Paperbacks, Inc. Barnes testified Sweeney was "a director or in charge of security sales or something of that nature." Barnes received training from Sweeney and eventually obtained a part-time security salesman's license from proper authorities.

Barnes was dispatched to the public with authority to sell stock in the two companies. Sweeney and Allen also supplied Barnes with "buy-back forms" under which the two companies agreed to buy stock back at a fixed price above the cost price.

Aside from the furnishing of "buy-back forms" to Barnes and his availability by telephone or in his office, Allen, like the "Kingfish" of other times, stayed in the background and apparently "masterminded" the incorporation of the two companies and the offer of their stock for sale. He signed all the stock certificates and agreements to "buy back" as president of the respective corporations.

Shortly after the two sales in question, stock dividends were declared and were either delivered in person by Barnes or were mailed by Allen.

The stocks in question were admittedly not registered as the statute required.

By the very nature of this case and the seemingly endless efforts of some to evade the law enacted for the protection of the security-buying public, we do not hesitate to certify the law herein. We think unquestionably the certification of the law in this situation is "important to the correct and uniform administration of the law" contemplated by KRS 21.140(3).

In misdemeanor cases where the punishment is by a fine only, the Commonwealth may have a reversal and a new trial should the law and facts authorize such course. Commonwealth v. Devine, Ky., 396 S.W.2d 60 (1965). However, where the punishment may involve a jail sentence, as in the present case, the defendant has been placed in jeopardy, and the Commonwealth is not entitled to a new trial. Commonwealth v. Mullins, Ky., 405 S.W.2d 28 (1966).

■ We are mindful of a line of cases, including Commonwealth v. Johnson, 261 Ky. 319, 87 S.W.2d 625, Commonwealth v. Sullivan, 285 Ky. 477, 148 S.W.2d 343, and Commonwealth v. Collins, 291 Ky. 685, 165 S.W.2d 357, holding that ordinarily this court will not certify the law on an appeal from a directed verdict on the ground of insufficiency of the evidence. However, those cases involved situations that were not likely to be repeated as in the instant case. So we do not consider the cases last cited as establishing a hard-and-fast rule that the law will not be certified in "insufficient evidence" cases.

We next should resolve the interesting question whether Barnes was an accomplice. More than sixty years back, this court thus defined and analyzed the term "accomplice" in Levering v. Commonwealth, Ky., 132 Ky. 666, 117 S.W. 253, at page 257:

" * * * [A]n 'accomplice' may be one of the principal actors, or an aider and abettor, or an accessory before the fact. The word includes in its meaning all persons who participate in the commission of a crime, whether they so participate as principals, aiders, and abettors, or accessories before the fact. * * * The test, generally applied to determine whether or not one is an accomplice, is, Could the person so charged be convicted as a principal, or an accessory before the fact, or an aider and abettor upon the evidence?"

To find whether Barnes was an accomplice we turn to the facts and to the wording of the statute to see whether Barnes "could be convicted" of the crime, either as principal or as an aider or abettor.

■ The statute (292.991) makes it unlawful and a crime to "wilfully" sell unregistered securities. Here arises another question, whether it was necessary for Barnes to have "knowledge" of the fact that the securities he sold were unregistered in order for him to be found to have "wilfully violated" the statute.

It may be said that Barnes did not have such knowledge from his testimony that the minute he learned the securities were not registered, he immediately discontinued all efforts to sell them. However, it is immaterial that he had no actual knowledge, as he was presumed to have and is chargeable with knowledge of the laws under which he was undertaking to do business. There is ample authority for this conclusion. In 47 Am.Jur., Securities Acts, § 54, at page 603, we find this statement: "Actual knowledge that the securities were being sold in violation of the law is not required as an element of crime * * *."

A very similar factual case was presented in Louisville & J. Ferry Co. v. Commonwealth, Ky., 104 Ky. 726, 47 S.W. 877, in which this court said at page 880:

"It is very earnestly argued for appellant that it could not be guilty of the offense charged, unless it actually knew of the existence of the law requiring the report to be made, and that its failure to report should have been with that knowledge, and that the term 'willful' necessarily means a deliberate determination to refuse to make the report, for the purpose of defrauding the state, or evading or hindering it in the collection of taxes. We are unable to concur in this view. The rule of law is universal which presumes all persons to know the law, and, if there be any exceptions to this rule, we are satisfied that the case at bar does not fall within them. The term 'willful,' as used in the statute, simply means the voluntary act of a party, as distinguished from coercion * * *."

See also United Fuel Gas Co. v. Commonwealth, 171 Ky. 525, 188 S.W. 660; Hammershoy v. Commonwealth, Ky., 408 S.W. 2d 624; and Durham v. Commonwealth, Ky., 398 S.W.2d 696.

■ We are of the opinion that Barnes could have been indicted for and convicted of wilfully selling unregistered securities under KRS 292.340. It follows that he was an accessory to the crime requiring cor-

roboration to support a conviction as required by RCr 9.62. Was there corroborative evidence sufficient to convict? Appellant concedes as to Sweeney there was not sufficient corroborative evidence to convict. With this we agree. However, as to Allen, there was evidence that he issued, signed, and delivered stock certificates and that he signed as president of the two companies the agreements to "buy back" the stock. Also introduced in evidence by the Director of Securities of the State of Kentucky were certified copies of the articles of incorporation of the two companies showing that Allen was the sole incorporator of both.

Rayhill testified he received his stock certificate and agreement to "buy back" the stock; both of which were signed by Allen as president. The same is true as to the evidence of Baskett.

The Director of Securities gave evidence that the securities were not registered.

We conclude that there was sufficient corroborative evidence as to Allen. See Harris v. Commonwealth, Ky., 285 S.W.2d 489 (1955).

In connection with the contention that the two sales were exempt under the statute we quote the following:

KRS 292.340

"It is unlawful for any person to offer or sell any security in this state, except securities exempt under KRS 292.400 or when sold in transactions exempt under KRS 292.410, unless such security is registered by notification under KRS 292.350 or by coordination under KRS 292.360 or by qualification under KRS 292.370." (Penalty is a fine of not more than $5,000 or imprisonment of not more than three years or both. KRS 292.991.)

\* \* \* \* \* \*

KRS 292.410

"Except as hereinafter in this section expressly provided, KRS 292.330 to 292.390 shall not apply to any of the following transactions:

"(1) Any isolated transaction, whether effected through a broker-dealer or not;

\* \* \* \* \* \*

"(9) Any transaction pursuant to an offer directed by the offeror to not more than ten persons (other than those designated in subsection (8)) in this state during any period of twelve consecutive months, whether or not the offeror or any of the offerees is then present in this state, if (a) the seller reasonably believes that all the buyers are purchasing for investment, and (b) no commission or other remuneration is paid or given directly or indirectly for soliciting any prospective buyer; \* \* \*."

Barnes testified he was authorized to sell 4,000 shares of stock; that he contacted at least thirty prospective purchasers and actually sold stock to about ten of them; that in addition to sales to Rayhill and Baskett, he bought 100 shares himself, sold a block of stock to a brother-in-law, and some to "three or four individuals."

In determining whether sales are "isolated sales" under our statute, the court should consider sales mentioned in the evidence regardless of whether they are listed in the indictment.

In Commonwealth v. Summons, 157 Pa. Super. 95, 41 A.2d 697 (1945), it was held:

"The sales charged in the indictment upon which appellant was convicted were the only ones made in Cambria County. But there were many other sales of stock made by him in Clearfield County, and evidence of these was admissible to rebut the inference that the transactions in question were isolated and to establish a course of dealing."

See also Ferar v. Hall, 330 Mich. 214, 47 N.W.2d 79, and Gales v. Weldon, Mo., 282 S.W.2d 522. In the Gales case it was held that five separate sales of securities over

a two-month period were not as a matter of law "isolated sales." See also Nelson v. State, Okl.Cr., 355 P.2d 413 (1960).

■ The trial court had some inclination to think that the sales in question were exempt by KRS 292.410(9), which gives an exemption in favor of any transaction pursuant to an offer directed by the offerer to not more than ten persons. Well, there was no such "offer" in the present case. The sales in question were clearly not exempt.

■ The final question before this court, and another one which perplexed the trial court, concerns the effect of the failure to prove that Allen was actually present when the securities were sold. But if he were "constructively present," this was sufficient. Warfield v. Commonwealth, Ky., 334 S.W.2d 913 (1960); Hensley v. Commonwealth, Ky., 280 S.W.2d 540 (1955); and Hartman v. Commonwealth, Ky., 282 S.W.2d 48 (1955).

■ The requirement of "constructive presence" is satisfied if the aider and abettor can (1) arrive on the scene if necessary to render aid and assistance in the perpetration of the crime, or (2) watch out for trouble and give the perpetrator of the crime information of approaching danger, or (3) take part in aiding the escape of the perpetrator after the commission of the crime. Cf. Clark v. Commonwealth, 269 Ky. 833, 108 S.W.2d 1036 (1937), and Able v. Commonwealth, 68 Ky. 698. It should be remembered that Allen made himself available by telephone both at his office and at his home. Also, the sale of unregistered stock unlike crimes such as murder, robbery, and theft seldom if ever requires a "watch out for trouble" or aid in escaping. In a case such as the one here presented, proof of the actual presence of an aider and abettor is not required.

The law in this case is thus certified.

All concur.