

**In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00124-CR
_____

CHAD MICHAEL HAYS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 25586

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

By selling interests in an oil well venture called the Honey Grove[1] Single Well Joint Venture, largely through telephone calls placed to wealthy individuals, Mack Diamond Energy (MDE), a company headquartered in Wolfe City, successfully raised some $2.5 million to drill the oil well. The well was never drilled.

MDE was owned and operated by Mack Hays and his son, Chad Michael Hays, and many of the sales efforts were handled by Chad.[2] As a result,[3] Chad was indicted for multiple offenses under the Texas Securities Act in three separate cases. *See* TEX. REV. CIV. STAT. ANN. art. 581-29(B), *amended by* Act of May 18, 2011, 82nd Leg., R.S., ch. 523, § 2, 2011 Tex. Sess. Law Serv. 1298, 1299 (West 2011). In this case—trial court cause number 25586—Chad was

---

[1]Honey Grove is in Fannin County, which is to the north of Hunt County, where Wolfe City is situated. This is relevant to the venue issue in this appeal.

[2]Chad's job with MDE was described as a PR person whose job was to "cold call" individuals and see if they would be interested in investing in an oil well. Several investor-clients testified they were contacted by Chad, asking them to invest in MDE's oil well project. The company's practice was to only contact people with net worths of at least $1 million. The record does not reveal how the potential investors or their wealth were identified. There was testimony Chad was aggressive in his telephone inquiries.

[3]There was evidence that a significant amount of money from the investors went to salaries, office equipment, and building payments. An investigator for the Texas Securities Board testified that only $376,403.83 of more than $2.5 million raised went to expenses for the oil well such as performing and interpreting seismologist reports and obtaining drill permits; the drilling permits, though, were not acquired until after the drilling rig was actually placed on the well site; and the company did not have a bond with the state Railroad Commission. Significantly, MDE had to renegotiate its contract with the drilling company that was to perform the actual drilling to lower the payments. Even at the lower rates, MDE could not come up with enough money for the drilling to commence. At some point, Mack and Chad, as well as at least one other person with MDE, began to offer shares in a second well, in an attempt to secure enough funding for the first, unstarted, well. Don Dean, MDE's CFO, warned Mack and Chad not to divert investments received for the second well to the first project. Of the investors who testified at trial, most of them invested in 2007—after Dean had renegotiated the drilling contract in December 2006. The record is not clear as to specifics of MDE's demise or the beginning of criminal allegations. Investor Dwight McGee contacted Warsing in March 2008, sending Warsing some of the communications McGee had received from Chad. The indictments were returned April 24, 2009.

2

charged in fourteen, and convicted in eight, counts under Article 581-29(B), for sale of unregistered securities,[4] and sentenced to ten years' confinement.

Chad's appeal primarily focuses on his claim that conviction of this offense requires proof that he knew the interests he was selling were securities and that they were required to be registered, but were not. He also challenges the sufficiency of the evidence as to certain investors and as to the venue of the prosecution.

We affirm the trial court's judgment, because (1) no proof was required that Chad knew the venture shares were securities or that they must be registered, (2) it was not error to instruct the jury that the State need not prove Chad's knowledge that the shares were securities or that they must be registered, (3) Chad's counsel was not ineffective in failing to request a jury instruction on mistake of fact, (4) sufficient evidence connects Chad to sales to the four challenged investors, and (5) venue was proper in Hunt County.

*(1)* *No Proof Was Required that Chad Knew the Venture Shares Were Securities or that They Must Be Registered*

Chad claims the State was required to prove that (a) Chad knew the investment offerings he was selling qualified as securities, and (b) he knew these stock offerings had to be registered with the Texas Securities Board. At the time of the alleged offense, the statute under which Chad was convicted says that any person who shall

> Sell, offer for sale or delivery, solicit subscriptions to and orders for, dispose of, invite orders for, or who shall deal in any other manner in any security or

---

[4]In a second case—trial court cause number 25587, our case number 06-11-00125-CR—Chad was charged in fourteen counts under Article 581-29(A), for sale of securities by an unregistered person. In a third case—trial court cause number 25588, our case number 06-11-00126-CR—Chad was charged in a single count under Article 581-29(C) for fraud in the sale of securities. Those two cases are disposed of by separate opinions issued this date.

3

> securities issued after September 6, 1955, unless said security or securities have been registered or granted a permit as provided in Section 7 of this Act, shall be deemed guilty of a felony, and upon conviction thereof shall be sentenced to pay a fine of not more than $5,000 or imprisonment in the penitentiary for not less than two or more than 10 years, or by such fine and imprisonment.

Tex. Rev. Civ. Stat. Ann. art. 581-29(B). Analyzing the State's burden under the hypothetically correct jury charge,[5] the State had to prove Chad (i) sold/offered for sale/invited offers or dealt in any other manner; (ii) any security or securities; (iii) where said security or securities were not properly registered with the State Securities Board Commissioner. Tex. Rev. Civ. Stat. Ann. art. 581-29(B); *see also* Tex. Rev. Civ. Stat. Ann. arts. 581-2, 581-7 (West 2012). An interest in an oil well qualifies as a security. Tex. Rev. Civ. Stat. Ann. art. 581-4(A) (West 2012). As no mental state is expressed in the statute, it must be shown Chad acted intentionally, knowingly, or recklessly. Tex. Penal Code Ann. § 6.02(c) (West 2011); s*ee Koah v. State*, 604 S.W.2d 156, 160 (Tex. Crim. App. [Panel Op.] 1980) (because Article 581-29 expresses no culpable mental state, Section 6.02 of the Texas Penal Code applies). The State's indictment alleged Chad committed the offenses knowingly, thus adopting that as the required mental state.

Chad claims that he was held strictly liable for the charged offense and that the evidence shows only that he sold "something." Chad argues that, in contrast, the State was required, and failed, to prove Chad knew the venture shares were securities and had to be registered. Chad

---

[5]Sufficiency of the evidence is measured by the hypothetically correct jury charge, which accurately sets out the law, is authorized by the indictment, and does not unnecessarily increase the State's burden of proof. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

cites *Hentzner v. State*, 613 P.2d 821 (Alaska 1980), and *People v. Salas*, 127 P.3d 40 (Cal. 2006). We find these nonbinding cases distinguishable from the situation at hand.

In *Hentzner*, the State alleged the defendant sold investment contracts, which the State urged qualified as securities under Alaska law. Hentzner raised money by promising to sell gold at a fixed price per ounce, to be delivered several months after the sale. He told prospective investors, or purchasers of the offered interests, he would use their money to actually do the mining, then repay them with the gold at the (below market) promised prices. While mining, Hentzner was served with a notice from the Alaska State Troopers to cease his mining activities. *Hentzner*, 613 P.2d at 822–23. The Alaska high court determined that the regulation at issue criminalized a *malum prohibitum* act, not one which was *malum in se*—in other words, it was illegal just because of its legislative proscription, not because it was innately immoral. *See* BLACK'S LAW DICTIONARY 1045 (9th ed. 2009). Therefore, "consciousness of wrongdoing should be regarded as a separate element of the offense,"[6] absent some exception for public welfare offenses, such as "where the penalties are relatively small and the conviction does no great damage to an offender's reputation." *Speidel v. State*, 460 P.2d 77, 80 (Alaska 1969) (invalidating felony offense of failing to timely return rental car, since statute required no criminal intent on defendant's part). The *Hentzner* court, however, also based its holding not just on its previous *Speidel* opinion, but on another opinion where it found that a defendant's

---

[6]*Hentzner*, 613 P.2d at 826.

5

reasonable belief his rape victim was of the age of consent was an affirmative defense. *Hentzner*, 613 P.2d at 826 (citing *State v. Guest*, 583 P.2d 836 (Alaska 1978)).[7]

In *Salas*, the California reviewing court found the trial court erred in its instruction to the jury regarding the defendants' claim of good-faith belief they were selling securities, which were exempt from registration. The *Salas* court found that a seller who reasonably and in good faith believes that a security is exempt from the statutory requirement of registration is not guilty of the crime of unlawful sale of an unregistered security. *Salas*, 127 P.3d at 41. However, guilty knowledge was not an element of the crime, but lack thereof was an affirmative defense. *Id.* at 41–42 ("the severity of the penalties attached to this crime persuades us that the Legislature did not mean to impose criminal liability on defendants who lacked guilty knowledge of facts essential to make the conduct criminal").

*Hentzner* and *Salas* are not controlling for this Court and we do not find them persuasive. While we do not conclude that the Securities Act creates strict liability,[8] several cases note that the purpose of the statute is the protection of the public: "The legislative intent clearly was to impose criminal sanctions for almost any dealing in securities without a license." *Shappley*, 520

---

[7]Such a defense is not available in Texas. *See Johnson v. State*, 967 S.W.2d 848, 849 (Tex. Crim. App. 1998); *Vasquez v. State*, 622 S.W.2d 864, 866 (Tex. Crim. App. [Panel Op.] 1981); *Byrne v. State*, 358 S.W.3d 745, 747 (Tex. App.—San Antonio 2011, no pet.).

[8]However, *see Shappley v. State*, 520 S.W.2d 766, 769 (Tex. Crim. App. 1974) ("As long as the bonds are unregistered, strict liability is imposed regardless of how many securities are involved.").

6

S.W.2d at 768; *see also Bridwell v. State*, 804 S.W.2d 900, 906 (Tex. Crim. App. 1991); *see generally Kadane v. Clark*, 143 S.W.2d 197 (Tex. 1940).[9]

Closer to home, Hays cites *L.B. Foster Co. v. State*, 106 S.W.3d 194 (Tex. App.— Houston [1st Dist.] 2003, pet. ref'd). There, the defendant was convicted of illegally disposing of used motor oil in violation of the Texas Water Code. Chad directs us to the appellate court's statement:

> The used oil offense involved here requires two separate, culpable mental states. The first is that the actor knowingly disposed of used oil. TEX. WATER CODE ANN. § 7.176(a)(2). The second is that the actor knew the object of the disposal is "used oil." With regard to the conduct elements, to commit the offense of illegal disposal of used oil, a person must act knowingly with respect to both the nature of his conduct (i.e., the disposal) and the circumstances surrounding his conduct (i.e., that what he is disposing of was used oil).

*Id.* at 212. Chad claims this language supports his argument that, here, the State was required to prove Chad knew the interests he was selling were securities and that he knew he was not a registered agent or dealer of securities. At issue in *Foster* was the defense's complaint that the trial court's charge did not require the jury to find the required mental state as to the nature of the company's conduct, but rather allowed the jury to find that the crime was committed if the jury found Foster had the requisite mental state regarding the circumstances surrounding the conduct.

*Foster* does not support Chad's argument. The court there did say, as quoted by Chad, that the Texas Water Code statute at issue in that case requires knowledge of the disposal and of

---

[9]The State cites us to a Kentucky case, *Commonwealth v. Allen*, 441 S.W.2d 424 (Ky. 1969), where the court considered the appellant's contention that the proof was required to show he knew he was selling unregistered securities. "[I]t is immaterial that he had no actual knowledge, as he was presumed to have and is chargeable with knowledge of the laws under which he was undertaking to do business." *Id.* at 427. Citing the "universal" rule of law that all persons are charged with knowledge of the law, the court found Allen could be convicted of willfully selling unregistered securities. *Id*.

7

the circumstances—that is, used oil was disposed of. But the complaint at issue in *Foster* was the jury charge: Foster wanted a more detailed recitation of what had to be proved. The reviewing court found no abuse of discretion in the trial court's refusal of the requested charge. The trial court's charge instructed the *Foster* jury to find the defendant company guilty if the jury found the defendant did unlawfully and knowingly dispose of used oil on land. According to the appellate court, in the application paragraph "knowingly" "directly modifie[d] the phrase 'disposes of.'" *Id.* at 213. Chad relies on *Foster*'s holding that the Texas Water Code offense required a culpable mental state as to the disposal and the condition of the oil—or as to the nature of the conduct and the circumstances around the conduct. We do not find the statute at issue in this case requires a culpable mental state as to the circumstances of the offense.

Section 6.03 of the Texas Penal Code sets out three "conduct elements" that may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03; *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *Lugo-Lugo v. State*, 650 S.W.2d 72, 74 (Tex. Crim. App. 1983). Where specific acts are criminalized because of their very nature, a culpable mental state must apply to committing the act itself. *See*, *e.g.*, TEX. PENAL CODE ANN. § 47.02 (West 2011) (gambling offenses). Conduct which is criminalized because of its result requires culpability as to that result. *Kelly v. State*, 748 S.W.2d 236 (Tex. Crim. App. 1988) (injury to elderly individual); *Alvarado*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985) (injury to child); *Lugo–Lugo*, 650 S.W.2d at 81 (murder). Where otherwise innocent behavior becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to

8

those surrounding circumstances. *McClain v. State*, 687 S.W.2d 350 (Tex. Crim. App. 1985) (theft). An offense may require knowledge both as to the nature of the conduct and the circumstances around the conduct. *McQueen*, 781 S.W.2d at 604 (unauthorized use of motor vehicle).

We find that the crime of sale of unregistered securities is a nature-of-conduct offense, akin to gambling or indecency with a child. Here, the nature of the conduct itself is criminal, as contrasted with achieving a certain result.[10] We reach this conclusion partially because the purpose of the Securities Act is the protection of the public.

The Securities Act was "enacted solely to protect the interests of the public," who had been "notoriously imposed upon, and ofttimes people were defrauded out of their life's savings" by unscrupulous parties selling worthless securities in the oil business. *Kadane*, 143 S.W.2d at 199; *see Shappley*, 520 S.W.2d at 768 ("The legislative intent clearly was to impose criminal sanctions for almost any dealing in securities without a license."); *Bridwell*, 804 S.W.2d at 906. Hays cannot hide behind claimed ignorance of the requirement that securities must be registered. *See* TEX. PENAL CODE ANN. § 8.03 (West 2011); *Crain v. State*, 153 S.W. 155 (1913) ("Ignorance of the law excuses no one.").

---

[10]Having said this, we point out a sister court found a Securities Act violation "is not a 'nature of the conduct' offense." *Cook v. State*, 824 S.W.2d 634, 638 (Tex. App.—Dallas 1991), *pet. ref'd*, 828 S.W.2d 11 (Tex. Crim. App. 1992). The *Cook* court, though, was addressing a Securities Act violation alleging fraud: "Selling securities under certain circumstances, i.e. by fraudulent means, is forbidden. Thus, a violation of the Securities Act is an offense dealing with the 'circumstances surrounding the conduct,' and the culpable mental state of 'knowingly' must apply to those surrounding circumstances." *Id.* at 638–39 (citing *McQueen*, 781 S.W.2d at 603). We address Chad's conviction for fraud in connection with the sale or offer of sale of securities in our opinion in cause number 06-11-00126-CR.

We find helpful *Tovar v. State*, 978 S.W.2d 584 (Tex. Crim. App. 1998). The Texas Court of Criminal Appeals upheld Tovar's convictions for violating the Open Meetings Act.[11] Where the defendant claimed the State had to prove the defendant knew a closed meeting was prohibited under the law, the Texas Court of Criminal Appeals found the language of the statute—defining the offense as a member of a governmental body calling, aiding in calling, or organizing a closed meeting, and providing no exceptions—required a culpable mental state only as to the calling, aiding in calling, or participating in the meeting, not as to the fact that the closed meeting was not permitted. *Id.* at 587. Likewise, the law at issue here criminalizes selling a security which is unregistered. The statute does not include a culpable mental state, so one is ascribed by Section 6.02(b) of the Texas Penal Code. In the instance of the statute's prohibition of selling unregistered securities, it is the nature of the conduct which is criminalized.[12] The State's indictment and the trial court's charge alleged Chad knowingly offered for sale unregistered securities.[13]

The State had to prove Chad knew he was selling venture interests in an oil well prospect; the State did not have to prove Chad had knowledge of the statute's defining them as securities or the requirement that those securities be registered. There was evidence the interests in the oil

---

[11]*See* TEX. GOV'T CODE ANN. § 551.144 (West 2004).

[12]*Cf. Cook*, 824 S.W.2d 634 (violation of Securities Act by fraud is circumstances-of-conduct offense).

[13]Chad tries to distinguish *Tovar* by characterizing that case as involving a mistake of law defense, but we do not read either the Texas Court of Criminal Appeals' or lower court's opinion to indicate Tovar urged a mistake of law defense, which is not allowed in Texas. We find no distinction in Chad's assertion that he was not aware of the "circumstance" of his alleged crime (i.e., that the securities had to be registered) and Tovar's claim that proof was required he knew his closed meeting was not permitted.

10

wells Chad was selling were securities. Even if Chad were not charged with knowledge of the statute's definition of "security,"[14] there was evidence he could be found to have knowledge that the interests in the wells constituted "securities" in the common meaning of the word. The dictionary definition of "security" includes "an instrument of investing in the form of a document (as a stock certificate or bond) providing evidence of its ownership." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1123 (11th ed. 2006).

Among the State's exhibits at trial were documents provided to investors by MDE, which included application agreements, including language indicating the investor is contributing a dollar amount as "initial capitalization." The documents also recite that the investor is able to "bear the economic risk" of his or her contribution and that the contribution is in exchange for a specified percentage of the oil exploration. One of these documents included a note signed by "Chad Hays." There are also letters on MDE letterhead, signed by Mack, acting as receipts for the parties' "investment." These exhibits, and the testimony from several witnesses that Chad was an integral part of the sales operation of the company are evidence the interests in the well were securities, and the jury could find Chad knew he was selling securities, even if that were required. As for the unregistered nature of the securities, there is no requirement Chad had to know the statute required the securities be registered with the appropriate Texas agency. Rather, Chad had only to possess the mental state of "knowingly" as it related to the nature of his conduct, i.e., selling the interests. Joseph Oman, Assistant Director of Enforcement for the Texas Securities Board, testified there was no record of any security offered by MDE being

---

[14] *See* TEX. REV. CIV. STAT. ANN. art. 581-4(A).

11

registered with the Board. The State admitted into evidence a certificate from the Texas State Securities Board stating that no securities issued by MDE were registered, and no permit had been granted for any such securities. Oman also testified that the interests in the oil wells constituted securities and that, to be liable under the statute, one merely had to be aware one was selling an investment.

We find the statute prohibited the knowing sale of investments that happen to be unregistered securities; and there was sufficient evidence Chad knowingly engaged in the prohibited conduct. This point of error is overruled.

*(2)    It Was Not Error to Instruct the Jury that the State Need Not Prove Chad's Knowledge that the Shares Were Securities or that They Must Be Registered*

Chad also complains the trial court erred in overruling Chad's objection to an instruction in the charge that the State was not required to prove Chad knew the interests he offered to potential investors were securities; and the State was not required to prove Chad knew such securities had to be registered with the Texas Securities Board. Chad alleges this error in the beginning of his appellate argument on the issue of proof of culpability, discussed above. He offers no specific legal authority or argument why the trial court's jury instruction was error.[15]

---

[15]If a point of error is inadequately briefed, we will not address it. *Vuong v. State*, 830 S.W.2d 929 (Tex. Crim. App. 1992). We will not brief a defendant's case for him or her. *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). However, based on the discussion of point of error one, we overrule Chad's second point.

For the reasons in the preceding section, we find no error in the instruction.[16] Finding no error in the charge, we overrule this issue.

*(3)*      *Chad's Counsel Was Not Ineffective in Failing to Request a Jury Instruction on Mistake of Fact*

Chad claims his trial counsel should have asked for a jury instruction on mistake of fact, and asserts that failure to request such an instruction was ineffective assistance of counsel.[17] There is nothing in the appellate record reflecting a motion for new trial or that any effort was made to produce a record revealing trial counsel's strategy or reasons for his actions or inactions.

Direct appeal is usually an inadequate vehicle for raising a claim that trial counsel was ineffective, because the record is generally undeveloped for this purpose. *See Freeman v. State*, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003); *Fuller v. State*, 224 S.W.3d 823, 828–29 (Tex. App.—Texarkana 2007, no pet.). When reviewing alleged deficient performance of counsel, counsel's conduct is reviewed with great deference, without the distorting effects of hindsight, where the record is silent as to counsel's reasons for failing to do something. *Thompson*, 9 S.W.3d at 813. Usually, the trial attorney should be given the opportunity to explain the representation at trial, before a court finds that he or she rendered ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003); *Fox v. State*, 175 S.W.3d 475,

---

[16]If no error is present in the jury charge, there is no need to conduct an analysis under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g). *See Taylor v. State*, 332 S.W.3d 483, 489 n.12 (Tex. Crim. App. 2011); *Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998).

[17]To succeed on a claim of ineffective assistance of counsel, an appellant must establish that counsel rendered constitutionally deficient performance, and the appellant was prejudiced by such deficiency. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Failure to satisfy either part of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006).

13

485 (Tex. App.—Texarkana 2005, pet. ref'd). There is a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The defendant must rebut that presumption. *Id.* If the record is silent as to an attorney's particular course of action, we ordinarily must find that the defendant did not rebut the presumption. *Thompson*, 9 S.W.3d at 814. We find nothing in the record indicating a motion for new trial was filed or that Chad took any steps to memorialize trial counsel's strategies or reason for his trial decisions.

Chad's appellate argument is that his trial counsel should have requested a jury instruction on mistake of fact, where the purported mistake of fact was that Chad mistakenly thought the interests he was offering for sale were not required to be registered. Even if Chad were unaware of the requirement that securities offered for sale be registered with the Texas Securities Board, this would not change his mental state of knowingly offering for sale the venture interests. To qualify for a mistake-of-fact defense under Section 8.02(a) of the Texas Penal Code, the mistaken belief must "negate[] the kind of culpability required for the commission of the offense." TEX. PENAL CODE ANN. § 8.02(a) (West 2011). *Cf. Celis v. State*, 354 S.W.3d 7, 29 (Tex. App.—Corpus Christi 2011, pet. granted) (defendant's alleged belief he was licensed to practice law in Mexico did not negate culpable mental state for unlawful practice of law); *Ingram v. State*, 261 S.W.3d 749, 753 (Tex. App.—Tyler 2008, no pet.) (belief that structure was abandoned not triggering mistake-of-fact instruction regarding structure as a habitation). Because we have found the crime of sale of unregistered securities is a nature-of-

14

conduct offense, any mistake of fact as to the "non-exempt" status of those securities, as Chad puts it in his brief, would be relevant to the circumstances of the conduct, which did not require a mental state. *See Gardner v. State*, 780 S.W.2d 259, 263 (Tex. Crim. App. 1989) ("A mistake of fact defense goes not to the 'act,' but, instead, to the attendant circumstances.") (addressing unauthorized use of motor vehicle allegation).

As discussed above, there was evidence that Chad knowingly offered the interests to various potential investors. There was evidence the interests were investments. There is no claimed mistake as to the investment nature of the venture interests, or that Chad did not know what he was selling, just that he was mistaken as to their nature as a security or their registration status. That does not trigger a mistake-of-fact instruction. Any alleged mistake of fact on Chad's part would not negate the culpability required of the charged offense. As Chad was not entitled to a mistake-of-fact instruction, trial counsel was not ineffective for not requesting such an instruction.

*(4)    Sufficient Evidence Connects Chad to Sales to the Four Challenged Investors*

Chad further claims that there was insufficient evidence to prove the transactions with four of the named investors. The indictment charged fourteen counts, each alleging Chad offered for sale and sold an unregistered security to different individuals. On appeal, Chad argues that Morris Cates, Dwight McGee, Mike Brown, and Susan DeJong, four of the investors alleged in the indictment and all of whom made investments in MDE's oil well plan, testified they spoke to Chad or someone representing himself to be Chad, only on the telephone. Chad claims there is no other evidence proving the person on the telephone with these investors was actually Chad,

15

and thus, there is insufficient evidence to connect him to the sales of securities to those four parties. We disagree.

There was additional evidence linking Chad to the sales calls, beyond the mere identification of a caller named "Chad Hays." Documentary evidence designates Chad as an officer for MDE and connects Chad to MDE's Honey Grove venture for which the caller named "Chad" was soliciting investors. The well venture is noted as being located in Fannin County. Chad was identified in open court. It was noted that Chad made the solicitation calls. Sufficient evidence connected Chad to these charges.

Chad claims in his brief that the testimony of the investors was hearsay, but most of his briefing complains of the lack of evidence to prove that the person to whom the witnesses spoke was indeed Chad. However, he lodged no authentication challenge to the witnesses' identification of Chad as the person who called them and offered to sell them interests in the oil wells. *See* TEX. R. EVID. 901. Failure to object to evidence results in admission of that evidence for all purposes. *See Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001) (evidence admitted without limiting instruction is in for all purposes and requires no limiting instruction).[18]

This point of error is overruled.

---

[18]*See also* TEX. R. EVID. 802 ("Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay."); *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) ("[O]nce the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its factfinding process, an appellate court cannot deny that evidence probative value or ignore it in its review of the sufficiency of the evidence."); *Hankey v. State*, 231 S.W.3d 54, 58 (Tex. App.—Texarkana 2007, no pet.) (failure to object to hearsay testimony rendered testimony admissible for all purposes).

*(5)    Venue Was Proper in Hunt County*

Chad finally contends that there is insufficient evidence in the record to establish proper venue in Hunt County.  If no specific venue provision is stated, offenses are properly prosecuted in the county where the offense was committed.  TEX. CODE CRIM. PROC. ANN. art. 13.18 (West 2005).  Venue is not an element of the offense and need be proved by only a preponderance of the evidence, not beyond a reasonable doubt.  *See* TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2005); *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003).  Absent affirmative record evidence showing the contrary, we presume venue to have been proper in the trial court.  TEX. R. APP. P. 44.2(c)(1); *see also State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd) (presume venue proven unless disputed at trial or record affirmatively negates venue).  In the absence of any record evidence that the offenses were not committed in Hunt County, the presumption prevails establishing Hunt County as the venue.

Several witnesses testified MDE's office was in Wolfe City.  Further, the application agreements presented by MDE to the investors stated the agreement was performable in Wolfe City, Hunt County, Texas, and any disputes or controversies are to be litigated in the courts in Hunt County.  Morris Cates visited Chad and other members of the company in their office in Wolfe City; so did David Harper's son.  There was sufficient evidence to establish venue.  Because venue was proper in Hunt County, we overrule the final point of error.

17

We affirm the trial court's judgment.



                                        Josh R. Morriss, III
                                        Chief Justice

Date Submitted:     April 3, 2012
Date Decided:       June 11, 2012

Do Not Publish

18